858 F.2d 898
 William R. RUIZ, Kevin J. Nally and John Greco, Jr., on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellants,
v.
The COMMISSIONER OF the DEPARTMENT OF TRANSPORTATION OF the
CITY OF NEW YORK and the New York State Department
of Motor Vehicles, Traffic Violations
Bureau, Defendants-Appellees.
 No. 236, Docket 88-7514.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 29, 1988.
Decided Oct. 7, 1988.
 
 Debra Ruth Wolin, New York City (Altieri, Kushner, Miuccio & Frind, P.C., Alexander A. Miuccio, of counsel), for plaintiffs-appellants.
 August L. Fietkau, New York City, Asst. Atty. Gen. of the State of N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., of counsel), for defendant-appellee New York State Dept. of Motor Vehicles, Traffic Violations Bureau.
 Elizabeth Dvorkin, New York City, Asst. Corp. Counsel of the City of New York (Peter L. Zimroth, Corp. Counsel of the City of New York, Edward F.X. Hart, Asst. Corp. Counsel, of counsel), for Mun. appellee The Com'r of the Dept. of Transp. of the City of New York.
 Before FEINBERG, Chief Judge, and CARDAMONE and PRATT, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 William R. Ruiz, Kevin J. Nally and John Greco, Jr., plaintiffs in this putative class action, appeal from a judgment of the United States District Court for the Southern District of New York, Robert J. Ward, J., for defendants Commissioner of the Department of Transportation of the City of New York and the New York State Department of Motor Vehicles, Traffic Violations Bureau. Although no class has been certified, we are informed that appellants are part of a group of approximately 40 truck drivers for the concrete industry who were ticketed for driving overweight trucks during 1984 and early 1985. Appellants challenge on various federal constitutional grounds the validity of summonses issued to them under New York City's former program of vehicle weight regulation. The district court found each of appellants' arguments without merit. We do not reach the substantive issues because, for reasons given below, we find the suit barred by res judicata.
 
 I. Background
 
 2
 Plaintiffs challenge the validity of summonses issued to them for violating former Sec. 211(10) of the New York City Traffic Regulations (City Regulations). This section set a maximum weight limitation of 73,280 pounds for all vehicles on roads and highways within New York City. New York, N.Y., Traffic Regulations art. 19, Sec. 211(10). Regulation enforcement officers, employed by the New York City Commissioner of Transportation, stopped plaintiffs while they were driving trucks on federal highways or on access ramps to federal highways within the city limits. Each driver was directed to proceed to a station where his truck was weighed, and was then issued a summons for violating the weight limitation. The drivers challenge the validity of these summonses.
 
 The relevant statutes
 
 3
 Pursuant to N.Y. Vehicle and Traffic Law (V & TL) Secs. 1640(a)(20), 1642(a)(1), New York City is authorized to regulate the weight of vehicles on streets and highways of the City. The City exercised this regulatory power by enacting former section 211(10). A violation of the weight regulations, if the summons was returnable at the Traffic Violations Bureau, was punishable by a sliding scale of fines, depending on the extent of the violation.
 
 
 4
 In January 1983, Congress enacted the Surface Transportation Assistance Act of 1982 (STAA), Pub.L. No. 97-424, 96 Stat. 2097 (codified as amended in scattered sections of Titles 15, 16, 23, 26, 33, 42, 46, 49 U.S.C.). Section 133(a) of the STAA attempts to establish uniform weights on federal highways by putting conditions on receipt of federal highway funds. 23 U.S.C. Sec. 127. This section provides that if a state does not set a maximum permissible gross weight restriction of 80,000 pounds for vehicles on "the National System of Interstate and Defense Highways," the state's federal funds may be cut off or withheld. 23 U.S.C. Sec. 127(a).
 
 
 5
 After Congress enacted the STAA, New York State enacted V & TL Sec. 385(20) in order to insure continued receipt of federal funds. This regulation provides in pertinent part:
 
 
 6
 [A city] shall not enact nor enforce any ... regulation with respect to vehicle dimensions or weights which shall violate any of the provisions of [the STAA]. Any such ... regulation which results in a notification of an imminent loss or withholding of federal highway aid to the state shall to the degree inconsistent hereafter be deemed null and void and shall not be enforced.
 
 
 7
 V & TL Sec. 385(20) took effect on September 30, 1983.
 
 
 8
 The City's 73,280 pound limitation set forth in former Sec. 211(10) was obviously more restrictive than, and therefore inconsistent with, the 80,000 pound limit established by the STAA. The City initially resolved the conflict by modifying its enforcement policies. The City enforced the 80,000 pound maximum permissible weight level on the "National System of Interstate and Defense Highways" as mandated by the STAA and enforced the 73,280 pound maximum weight limit on all other roads within the City as directed by former section 211(10) of its own regulations. In 1985, the City stopped this informal enforcement policy and ultimately amended its regulations to bring them into conformity with the 80,000 pound maximum weight limit of the STAA. Our decision in this case, therefore, rejecting appellants' attack on the statute before it was amended, has only a limited practical effect, although it is, of course, of direct concern to appellants, who received their summonses before the amendment became effective. All the drivers involved in this suit were issued summonses for driving trucks in excess of 80,000 pounds.
 
 Prior proceedings
 
 9
 Appellants originally brought this action in April 1985, seeking temporary and permanent relief against enforcement of the summonses. They claimed that they were subjected to unconstitutional searches and seizures by unauthorized Department of Transportation officers; that the statutory scheme under which appellants were given summonses was void for vagueness and deprived them of due process of law; and that the enforcement procedures used by the City violated due process for lack of publication. In February 1985, other truck drivers in the same situation as appellants, and represented by the same counsel, had brought suit in state court challenging their summonses on grounds somewhat different from those urged in the action now before us.
 
 
 10
 In August 1985, Judge Ward, who was in charge of the federal action (Ruiz ), placed it on his suspense docket pursuant to a stipulation between the parties. That stipulation provided that within five days "plaintiffs" would amend the complaint in the pending state action, Manno v. Comm'r New York City Dep't of Transp., New York County Clerk Index No. 3522/85 (Manno ), apparently to include the claims of the plaintiffs in Ruiz and that, within 30 days after service of answers to the amended complaint, "plaintiffs" would move for summary judgment in Manno. (It is unclear whether "plaintiffs" in the stipulation means the plaintiffs in Manno or the plaintiffs in Ruiz or both. But, as indicated below, we do not believe that this is of controlling significance.) Defendants consented to the amendment in open court. Moreover, defendant Department of Motor Vehicles agreed to stay proceedings regarding the summonses then pending before the Traffic Violations Bureau until the outcome of the Manno action. The stipulation also provided that if "plaintiffs" did not amend the complaint or move for summary judgment in Manno, the stay would be vacated. The list of potential class members whose hearings would be stayed included appellants.
 
 
 11
 Thereafter, the Manno complaint was amended to include appellants' federal claims and the parties moved in state court for summary judgment. In April 1986, the Supreme Court, New York County (Cohen, J.), granted appellees summary judgment. Judge Cohen found, among other things, that the officers issuing the summonses were properly authorized, that Sec. 211(10) was not void for vagueness, and that the statute did not violate due process. He denied plaintiffs' claims in their entirety.
 
 
 12
 The plaintiffs in Manno appealed Judge Cohen's decision to the Appellate Division, First Department, and simultaneously applied for a stay. That court granted the stay to all members of the group including appellants. The Appellate Division then unanimously affirmed the Supreme Court, and the New York Court of Appeals thereafter denied leave to appeal.
 
 
 13
 After defendants won Manno in the state courts, appellants in October 1987 reactivated the case now before us by again seeking a temporary restraining order and a preliminary injunction against further proceedings on the summonses issued against them under former Sec. 211(10). Judge Ward granted a temporary restraining order, which was later extended by consent. In January 1988, however, the judge granted appellees' motion for summary judgment in a thorough opinion. Ruiz v. Comm'r of Dept. of Transp. of New York, 679 F.Supp. 341 (S.D.N.Y.1988). Although the court stated that "res judicata in this case may not be inappropriate," it avoided what it regarded as "the unnecessary resolution of the res judicata question," id. at 349, finding for defendants on the merits. Assuming that the stopping and weighing of the vehicles were conducted by unauthorized individuals, the judge held that a stop conducted by an unauthorized person does not per se violate the Fourth Amendment. Id. at 355. Judge Ward also rejected plaintiffs' vagueness challenge, reasoning that under the appropriate standard of review "plaintiffs had adequate notice that driving trucks in excess of 80,000 pounds on federal highways within New York City was prohibited[.]" Id. at 353. The judge also held that the City's enforcement procedures did not violate due process for lack of publication. Id. at 354.
 
 
 14
 Plaintiffs moved for reargument, and in an opinion issued in June 1988, the district court denied plaintiffs' motion and entered judgment. This appeal followed. In July 1988, a panel of this court granted a stay of adjudication of the summonses until oral argument. This panel renewed the stay on August 29, 1988, when we heard argument.II. Res Judicata Issues
 
 
 15
 In this court, appellants argue that the district court erred in its decision on their Fourth Amendment, void for vagueness, and due process claims. Appellees argue that appellants' claims are barred by res judicata and, in the alternative, that the district court correctly decided the merits. Because we agree with appellees on the res judicata question, we do not reach the merits.
 
 
 16
 A federal court must give a state court judgment the same "preclusive effect" the judgment would have under the law of the state in which the judgment was rendered. Migra v. Warren City School District Board of Education, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Thus, appellants may not litigate the same claims again in a federal forum if New York law would bar them from doing so in a subsequent suit in state court. Genova v. Town of Southampton, 776 F.2d 1560, 1561 (2d Cir.1985). The res judicata rule in New York is as follows: "[A]s to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive [in any subsequent action] of the issues of fact and questions of law necessarily decided." Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979). This legal standard conforms with traditional principles in generally demanding both an identity of issues and an identity of parties between the prior and subsequent suits before operation of the res judicata doctrine is triggered. Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).
 
 Identity of issues
 
 17
 Although the district judge did not decide whether res judicata barred the federal action, he pointed out in his January 1988 opinion that the issues before the federal district court had all been presented to the state court in Manno and decided against plaintiffs. Ruiz, 679 F.Supp. at 347 n. 4. This was correct. However, after Judge Ward's January 1988 opinion, appellants belatedly made an additional Fourth Amendment argument to him that was never raised in the state courts, which they renew on appeal to this court. That argument is that when the officers stopped the various trucks in order to weigh them (which led to the summonses), the officers violated the Fourth Amendment because they did not have reason to believe that appellants' trucks were overweight. Appellees properly point out that this argument was raised below only in reply to appellees' opposition to appellants' motion for reargument, and that there was nothing in the record to justify the claim. In his June 1988 opinion denying the motion for reargument, Judge Ward made the same point, noting that the affidavit submitted by plaintiffs "sheds no light on the particular circumstances" of the various stops.
 
 
 18
 We believe that it was well within the discretion of the district court to reject a theory so belatedly advanced and so vaguely supported. In any event, under the broad transactional analysis used by the New York courts in applying claim preclusion doctrine, see Wright v. National Bank of Stamford, 600 F.Supp. 1289, 1299-1300 (N.D.N.Y.), aff'd, 767 F.2d 909 (2d Cir.1985); Reilly v. Reid, 45 N.Y.2d 24, 29-30, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978), see also 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4407 (1981), we believe that the failure to raise this Fourth Amendment argument in the state suit bars appellants from raising it here, where all the summonses were a product of the same procedures and raise the same legal issues. Because New York has a policy of denying class certification in suits against the government, Bryant Ave. Tenants' Assoc. v. Koch, 71 N.Y.2d 856, 859, 527 N.Y.S.2d 743, 522 N.E.2d 1041 (1988), we think New York would regard preclusion as particularly appropriate in this case. If claim preclusion is not applied broadly in cases like this one, governmental defendants could be subject to an overwhelming number of suits arising out of the same series of transactions.Privity
 
 
 19
 Since the remaining federal claims in Manno and in this case are the same, the decisive issue in determining whether appellants are barred from relitigating the claims in federal court is whether there is an identity of parties between the prior and subsequent suits.
 
 
 20
 Judge Ward hesitated to find an identity of parties. Ruiz, 679 F.Supp. at 349. We do not share the hesitancy. Having examined all of the surrounding circumstances, we find an identity of parties between appellants and the plaintiffs in Manno. Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970).
 
 
 21
 Under New York law, it is fundamental that a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them. Green v. Santa Fe Indus., 70 N.Y.2d 244, 253, 519 N.Y.S.2d 793, 514 N.E.2d 105 (1987). In this context, the concept of privity does not have a technical and well-defined meaning. Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970). Yet, the New York Court of Appeals has used the following guidelines to assess whether parties are in privity: "It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." Id. (citations omitted) (emphasis added).
 
 
 22
 Several factors persuade us that there was sufficient privity here to preclude appellants from relitigating their federal claims. First, although not conclusive on the issue of privity, the fact that the parties in Manno and in this case had the same attorney in actions brought at about the same time is of "singular significance." Id. at 278, 317 N.Y.S.2d 315, 265 N.E.2d 739.
 
 
 23
 In addition, the stipulation in open court was that the complaint in Manno would be amended to include the claims in Ruiz. Thereafter, the complaint in Manno was amended to contain every cause of action asserted in the complaint in Ruiz. In return, the various summons proceedings were stayed. Thus, appellants or a person to whom they had given control of their suit, such as their attorney, had the power not only to suspend Ruiz but to include their various claims in a pending state suit. This is not surprising in view of the attorney's statement to the district court, in an affidavit in support of a motion for class certification, that the named plaintiffs in this case are employed by companies in the ready-mix concrete industry, that the attorney's firm is counsel to the Industry Advancement Fund for the concrete producers and has represented the majority of the industry members for the past fifteen years as well as companies and truck drivers in the building materials industry and that the Industry Advancement Fund and members of the building materials industry were prepared to bear the costs of the class action litigation.
 
 
 24
 Appellants' attorney claims that he entered the stipulation below only as attorney for the plaintiffs in Manno, but this assertion is untenable since he was acting on behalf of appellants in an action (Ruiz ) brought by them. The Manno plaintiffs simply had no authority to make a stipulation on behalf of the Ruiz plaintiffs in the Ruiz case. Moreover, by the stipulation, appellants in fact authorized their attorney and the plaintiffs in Manno to represent their interests. See Expert Electric, Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). In effect, the state case was managed as appellants and their attorney thought it should be. See Green v. Santa Fe Indus., 70 N.Y.2d 244, 254, 519 N.Y.S.2d 793, 514 N.E.2d 105 (1987). Although appellants claim through the affidavit of their attorney that they did not participate or involve themselves in the Manno litigation, the content and context of the stipulation destroys this assertion. The stipulation shows that the parties in both cases, with the guidance of their law firm, formulated an overarching strategy for the two actions, which included combining the state and federal claims in one state suit.
 
 
 25
 In addition, and of substantial significance, is the presence of the names of the parties in both cases on lists submitted to the Traffic Violations Bureau providing for the stay of pending summons proceedings. The Manno plaintiffs appeared on the list of those benefiting from the stay of summons proceedings as a result of the stipulation in federal court. Appellants' names appeared on a stay granted by the State Appellate Division in Manno. Ruiz, 679 F.Supp. at 345. Not only did appellants contribute to strategy in Manno, they directly benefited from the state court's interim orders.
 
 
 26
 Finally, appellants argue that they are entitled to a ruling by a federal court on their arguments based upon federal law. However, the Supreme Court has held that because state courts have a constitutional obligation to uphold the federal constitution, Allen v. McCurry, 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980), a party is not automatically entitled to relitigate in federal court federal constitutional claims definitively decided in state court. Kremer v. Chemical Construction Co., 456 U.S. 461, 476, 102 S.Ct. 1883, 1894, 72 L.Ed.2d 762 (1982). Moreover, it must be remembered that the issues here were decided by the state courts because appellants agreed to that procedure. Under all of the circumstances, we conclude that appellants are in privity with the plaintiffs in Manno. This privity establishes the necessary identity of parties for the application of res judicata.
 
 
 27
 Citing Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 451 (7th Cir.1977), appellants argue that the receipt of incidental benefit from interim relief by the Appellate Division is insufficient to bar their claims on res judicata grounds. Even if this fact is insufficient on its own, we have not, as already indicated, based our conclusion solely upon it. We do not understand Coates to hold that the benefit to plaintiffs here from the state court interim relief has no significance whatsoever on the issue of privity. Appellants also argue that the district court properly relied upon Green v. Santa Fe Indus., 70 N.Y.2d 244, 519 N.Y.S.2d 793, 514 N.E.2d 105 (1987) in refusing to apply res judicata. But Green and this case are quite different. In Green, the Court of Appeals explicitly found that there was no indication that the prior action was managed as the plaintiffs then before it thought it should have been managed. Id. at 254, 519 N.Y.S.2d 793, 514 N.E.2d 105. In contrast, appellants in this case stipulated in federal court to amend the complaint in the state action and press all of their claims in that forum.
 
 
 28
 This is not a case where appellants have had no chance to pursue their claims aggressively. See Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485-86, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979) (fundamental principle of justice that person entitled to day in court). Appellants decided to allow their attorneys to fight their legal battle on the federal claims in state court, and, faced with a negative result, they now seek to relitigate the same claims. New York law recognizes the important role of res judicata in "conserv[ing] judicial resources by discouraging redundant litigation." Id. at 485, 414 N.Y.S.2d 308, 386 N.E.2d 1328. At oral argument, appellants offered other reasons why res judicata should not apply here, but we do not find them persuasive.
 
 
 29
 One final word. Appellants also claim that a portion of the stipulation discussed above, which provides that the parties shall not "be deemed to have waived any claim or defense in this matter," prevents the application of res judicata. Entirely apart from whether the parties to an action can avoid res judicata by stipulation, we disagree. This portion of the stipulation simply insures that the agreement not be interpreted as waiving any unlitigated claim. It does not give the right to litigate twice a claim that is thereafter pursued and lost.
 
 
 30
 For all the reasons set forth above, we believe the principles of res judicata bar this action. Accordingly, we affirm the judgment of the district court on that ground rather than on the merits, which we do not reach. The stay presently in effect is vacated. The request of the City Transportation Commissioner for sanctions is denied.