ALPERT'S NEWSPAPER DELIVERY INCORPORATED, F & M News Services (a Partnership of Robert Soltesz and Frank DiCenzo), Greystone News Service Inc., Jericho News Inc., Mitchell's the World's Finest Newspaper Delivery Services Incorporated and Yellowstone Home Delivery Inc. on behalf of themselves and all others similarly situated, Plaintiffs,

Jericho News Inc., Plaintiff–Appellant,

v.

THE NEW YORK TIMES COMPANY, Defendant–Appellee.

No. 673, Docket 88–7840.

United States Court of Appeals, Second Circuit.

Argued Jan. 19, 1989.

Decided May 17, 1989.

Peter G. Eikenberry, New York City (Eikenberry Futterman & Herbert, New York City, of counsel), for plaintiff-appellant.

Denis McInerney, New York City (Cahill Gordon & Reindel, Charles Platto, Patricia Farren, Craig A. Newman, The New York Times Co., George Freeman, New York City, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, LUMBARD, and FEINBERG, Circuit Judges.

LUMBARD, Circuit Judge:

Jericho News Inc., a newspaper home delivery service doing business in Long Island, New York, appeals from a judgment of the District Court for the Eastern District of New York, Glasser, J., granting the motion for summary judgment of defendant The New York Times Co. in an antitrust action brought against it by Jericho News and other newspaper delivery companies located within the Eastern District. The deliverers, all of whom deliver the Times and other newspapers on Long Island, allege that the establishment by the Times of its own home delivery routes (T–Routes) violates the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 et seq., and unlawfully discriminates against the independent deliverers.

The district court found that the judgment of the District Court for the District of Connecticut, Zampano, J., in *Belfiore v. The New York Times Co.*, 654 F.Supp. 842 (D.Conn.1986), aff'd, 826 F.2d 177 (2d Cir. 1987), cert. denied, —— U.S. ——, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988), precludes the antitrust claims of the plaintiffs in the present case on most of their claims and that the Times is entitled to summary judgment on the merits of the remaining claims. Jericho News Inc. alone appeals, arguing that the principles of preclusion do not apply when the only "identity" between the plaintiffs in this action and those in *Belfiore* is the fact that all of the delivery companies were members of the Metropolitan Routedealers Association (MRA), an organization composed of newspaper delivery services including all those named in this case and in *Belfiore*. The MRA, although a named party in neither suit, has provided much of the money and strategy for both, and has been sufficiently active in both suits to support a finding of identity of parties. We therefore affirm.

I.

This action, like *Belfiore* before it, involves delivery of the New York Times in the New York City metropolitan area. For many years, home and business deliveries of the Times were effected exclusively through delivery companies independent of the Times and of any other publication. The informal arrangement under which the Times was delivered, and under which it and its competitors are to a large extent still delivered, was established during the

1930s by a publishers' association composed of the Times and the numerous other morning dailies existing at the time. The association made territorial assignments to the various independent deliverers, each of which delivered all of the papers in its respective territory. As the number of morning dailies of general circulation dwindled, the publishers' association has ceased to be a viable entity, but the informal delivery agreement has generally survived.

During several years prior to 1982, the Times began to deliver its paper itself in certain areas not served by independent dealers pursuant to the informal distribution arrangement. Beginning in 1982, the Times began expanding its network of these T–Routes to various parts of the tri-state area that historically had been served by independent deliverers. The T–Routes were established first in Fairfield County, Connecticut, the place of business of the *Belfiore* plaintiffs, and, by 1985, they had been introduced to the Long Island territories of Jericho News and its co-plaintiffs. These T–Routes, which the Times alleges were created to provide cheaper delivery of its paper and thereby arrest a four-year decline in its home delivery circulation, created direct competition within each affected territory between the incumbent independent and the new T–Route operated by the Times. The Times has also discontinued its policy of referring new home delivery subscribers to the independents; it instead assigns new subscribers to its T–Route deliverers. The Times still permits the independents to enroll subscribers, but they maintain that commercial realities prevent them from doing so because the Times offers its paper to its T–Route subscribers at a price below its own costs.

This is the third lawsuit filed by independent deliverers in the aftermath of the Times' establishment of the T–Route system across the New York region. The first action was *Belfiore*, in which a number of independents alleged that the Times' practice is designed to run them out of business by depriving them of the subscriber density necessary to remain viable. The second was filed in 1984 in the District of New Jersey but was never litigated, *Metropoli-tan Routedealers' Association v. The New York Times Co.*, Ca. No. 84–187 (D.N.J.). Both *Belfiore* and this action were brought with the assistance of the MRA.

Before considering the merits, we must revisit *Belfiore*. That case, decided in the District of Connecticut in 1986 and affirmed by us in 1987, forms the basis of the claim and issue preclusion findings upon which the summary judgment appealed from is based.

*Belfiore* was brought in the District of Connecticut by independent newspaper deliverers in Fairfield County when the Times expanded its T–Route system into that county. They alleged that the Times had abused monopoly power, conspired to monopolize and attempted to monopolize under the Sherman Act, 15 U.S.C. § 2, and had fixed prices and conspired with others in restraint of trade under Section 1 of the Sherman Act. In addition to damages, the deliverers sought an injunction prohibiting the Times from using any persons or businesses other than themselves to provide home delivery of the paper in Fairfield County and enjoining the Times from providing home delivery of the paper at a price below that which the independents could provide.

The district court, granting the Times' summary judgment motion in all respects, found that the Times did not possess a monopoly in the relevant market of "general circulation daily newspapers." The court also rejected the deliverers' attempt to exclude from the relevant market the Times' two principal competitors, the New York Daily News and the New York Post, by defining that market more narrowly as "general interest daily newspapers directed primarily at upscale readers." The court also found that there was insufficient evidence to support a claim of attempt to monopolize, that no coerced pricing had occurred and that the Times had not conspired with co-defendants MCI Corporation (which ran the Times' toll-free telephone subscription service) and several wholesale deliverers either to restrain trade or to monopolize.

The district court expressly noted that the "admitted sponsor and orchestrator" of the action was the MRA, which had, since at least 1977, been amassing a " 'legal fund' to challenge the Times should it ever attempt to modify or eliminate the independent dealer system of home delivery." *Belfiore,* 654 F.Supp. at 844 n. 2. The MRA was, by admission of counsel for the *Belfiore* plaintiffs both in the district court and during argument before us, supervising the strategy of the litigation, had actually filed the complaint, had furnished legal assistance and was paying the independents' counsel in *Belfiore.* Judge Zampano denied the MRA leave to intervene, however, reasoning that the MRA's intervention would overbroaden discovery; we interlocutorily affirmed by unpublished order, *Belfiore, et al. v. The New York Times Co., et al.,* 742 F.2d 1431 (2d Cir.1983). In that order, we held that the district court had not abused its discretion by basing its decision in part on the fact that attorneys for the MRA were representing the plaintiffs and that the MRA's interests were therefore adequately protected.

In affirming the final judgment in favor of the Times, *Belfiore v. The New York Times Co.,* 826 F.2d 177 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988), we rejected the independents' proposal to redefine the market definition as the market for the sale of newspaper advertising throughout the New York metropolitan area. The independents based this proposed revised definition upon the premise that the Times appeals to an "upscale" readership and is therefore able to charge more for advertising lineage than its cheaper, yet more widely circulated, sisters. They alleged that once the independents were gone, this monopoly would be entrenched and the competitors could be forced to relinquish a greater share of the market. We rejected this definition primarily because no evidence was presented to show that the other papers could not create their own home delivery systems if they wished. Moreover, we noted that vertical integration, even by a monopolist, does not offend Section 2 of the Sherman Act.

The six plaintiffs in the present action filed their complaint on August 26, 1986. They made claims similar to those of the *Belfiore* plaintiffs, seeking treble antitrust damages, an injunction against further violations of the Sherman Act and relief on their pendent state claim of tortious interference with contractual relations. They sought certification of a class consisting of independent home delivery route dealers throughout the New York metropolitan area who deliver the Times, which the district court denied.

Specifically, the deliverers charge the Times with (1) abuse of monopoly power, the relevant market being "the sale of advertising in newspapers of general circulation throughout the New York metropolitan area," with this market definition tied closely to the "upscale" demographic profile of its subscribers; (2) attempt and conspiracy to monopolize in the Eastern District of New York by striving to drive the independents out of business by predatory tactics; and (3) restraint of trade through a conspiracy between the Times and the T–Route wholesalers with no procompetitive justification.

The MRA is again behind the deliverers' efforts. All of the named plaintiffs in this action are members of the MRA. Dennis R. Newman, the secretary of the MRA, states in an affidavit that "[t]he MRA has committed itself to plaintiffs to pay for all of the costs and expenses of this action" and that the action "has been prosecuted vigorously with its support."

The district court directed the Times on January 30, 1987 to file an accelerated motion for summary judgment. On August 23, 1988, the court granted that motion. In its memorandum accompanying the order, the court focused almost exclusively on the doctrine of res judicata.

First, the court determined that sufficient identity between the parties exists for the principles of claim and issue preclusion to apply because the MRA was so integrally involved in the two actions that it could fairly be characterized as a party.

Next, the court considered the identity of the issues in the two cases. Finding the gravamen of the complaints in *Belfiore* and the present case to be the same, and finding (a) that the market defined in the complaint in this case is essentially identical to that defined in *Belfiore* and rejected on appeal to this court; (b) that the proposed market definition did not show the Times to be any more of a monopolist than it was in the market defined in *Belfiore;* and (c) that the issue of the extent of the Times' monopoly had been an issue in the *Belfiore* litigation, the court held that claim preclusion barred any relitigation of the abuse of monopoly power claim.

Judge Glasser next examined the attempt and conspiracy to monopolize claims and found these claims identical to those raised in *Belfiore* and held that, since a full and fair opportunity existed in *Belfiore* to litigate the issues therein, issue preclusion barred the relitigation of the claims.

Lastly, Judge Glasser took up the restraint of trade allegations. In this portion of the complaint, the independents alleged that the Times engaged in predatory behavior by subsidizing the costs of the T–Routes in order to deliver the paper below cost, and asserted that the Times employed monopoly profits to create this "price squeeze." He held both of these claims precluded for the reasons stated above. The court then considered the merits of the remaining restraint of trade allegations. Finding that the coercive pricing and conspiracy charges had been characterized as matters of fact rather than law in *Belfiore*, but had not been disposed of there so as to give that disposition preclusive effect here, the court considered these claims on the merits. It found insufficient evidence of either of these violations to withstand summary judgment.

## II.

■ We agree with the district court that there is sufficient identity of parties in this action and *Belfiore* for collateral estoppel and res judicata to apply. Despite the fact that the MRA was not a named party in either action, it was the admitted master-mind and financier of the *Belfiore* litigation and it is providing similar tactical and financial help in the instant case. Therefore, the district court properly held that the deliverers in this case are barred from making claims and relitigating issues that were presented in *Belfiore.*

Jericho News argues that the fact that both actions were brought by MRA members is insufficient to permit the application of res judicata or collateral estoppel. Casting the relevant inquiry as the degree of "control" of the litigation the MRA could exercise in its role as a supervisory non-party rather than as the level of its actual participation in the lawsuits, and pointing out that the plaintiffs here are entirely separate from those in *Belfiore*, Jericho argues that the identity test fails.

■ We do not agree. Jericho News essentially argues that literal privity must exist among the parties for them to be termed identical. We have expressly held to the contrary. In *Expert Electric, Inc. v. Levine*, 554 F.2d 1227 at 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977), we stated that one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, even though the first party was not formally a party to the litigation. The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis. Therefore, the involvement of a trade association such as the MRA, which was undisputedly behind both lawsuits, requires that the relitigation of previously litigated issues be barred.

Such was the result in *Ellentuck v. Klein*, 570 F.2d 414 (2d Cir.1978), in which we held that a group of property owners were precluded from relitigating issues raised in a prior litigation brought by another group of property owners, when both suits were funded by a property owners' association. Although several of the plaintiffs were identical in the two proceedings at issue in *Ellentuck*, we did not rely on that fact in reaching the conclusion that the property owners' association's involve-

ment made res judicata appropriate. Similarly, in *Ruiz v. Commissioner of Department of Transportation of the City of New York*, 858 F.2d 898 (2d Cir.1988), we found identity of parties when two groups of truck drivers filed two suits, one in state court and one in federal court, challenging a New York vehicle weight regulation. We reasoned that, since the two groups were using the same attorneys in the two actions, the allegations were identical, and there were indications of an industry-wide strategy coordinated by counsel for the Industry Advancement Fund, sufficient identity of parties existed to bar relitigation of previously raised claims.

Having found that sufficient identity exists between the plaintiffs in *Belfiore* and in this case for res judicata to apply, we turn to the district court's application of that doctrine to dispose of the deliverers' claims. We agree with the district court, with the exception of Judge Glasser's disposition of the deliverers' abuse of monopoly claim. This issue, we believe, was too narrowly raised and insufficiently litigated for it to be barred. However, the Times was entitled to summary judgment on this issue for the same reasons as in *Belfiore.*

### 1. *Abuse of Monopoly Power*

The district court held that the doctrine of claim preclusion operates to bar relitigation of the abuse of monopoly claim because it was raised in *Belfiore* with a virtually identical definition of the relevant monopoly. In both cases, the complaints alleged the existence of a monopoly in a market consisting of newspapers of general circulation directed toward the well-educated and affluent (or "upscale") reader. In both cases, the deliverers modified their market definition to encompass the sale of newspaper advertising. The district court found that claim preclusion operates to prevent the deliverers from having "a second chance to prove [the monopoly] component of their claim."

■ The deliverers may not have had an opportunity in *Belfiore* to present sufficient evidence on the market definition involving advertising to preclude them from litigating the issue here. Arguments about abuse of a monopoly in the advertising market were raised only on appeal in *Belfiore.* Moreover, discovery in *Belfiore* was limited to Fairfield County. While this limitation does not affect the preclusive effect to be given other determinations in *Belfiore*, since the allegations in both cases are framed to encompass the entire New York metropolitan area, it is possible that the T–Routes might have a disparate impact upon the home delivery circulation of the independent deliverers in different parts of the region. It would be inappropriate, therefore, to prevent the deliverers herein from endeavoring to show the effects outside Fairfield County of the Times' alleged abuse of monopoly.

Summary judgment on the abuse of monopoly claim is appropriate, however. We find that the deliverers have again failed to present a triable question of whether the Times has a monopoly in the defined market because they have not shown that the Times possesses monopoly power in the relevant market and that such power was willfully acquired or maintained "as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident." *Hayden Publishing Co., Inc. v. Cox Broadcasting Corp.*, 730 F.2d 64, 68 (2d Cir.1984) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966)); *see Belfiore*, *supra*, at 180.

■ Just as we found in *Belfiore*, we find that the deliverers have failed to show that the alleged destruction of the independents through the T–Routes will lead to exclusion of the Times' competitors such that its advertising monopoly will be strengthened. Again, no evidence was presented to show why the other newspapers could not deliver their papers themselves or why the T–Route operators could not deliver the Times' competitors' papers. The necessary nexus required to prove a Section 2 violation has not been sufficiently shown to create a triable issue of fact.

**272**

2. *Attempt and Conspiracy to Monopolize*

 The deliverers here make the same allegations concerning the Times' conduct, intent and likelihood of success on the attempt and conspiracy claims as the deliverers did in *Belfiore,* with the exception that the deliverers in the instant case seek to introduce new facts to demonstrate that the Times' purported rationale for establishing the T–Routes—that its home delivery circulation had been in decline—was false and a cover for an attempt to monopolize. We agree with Judge Glasser that this issue could have been litigated in *Belfiore* and that the doctrine of issue preclusion denies to the plaintiffs here a second bite at the apple.

3. *Restraint of Trade*

 We agree with the district court that several of Jericho News's claims involving restraint of trade are barred. Jericho News's argument that the law was so altered in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), that *res judicata* may now not apply, is unpersuasive. In *Aspen Skiing,* the Supreme Court interpreted Sherman Act § 2 to require, in certain very limited circumstances, that a firm with monopoly power continue to engage in certain types of cooperative ventures with its smaller competitors. The chronology is otherwise. *Aspen Skiing* was decided in June 1985. Summary judgment motion papers in *Belfiore* were not in fact submitted until several months after *Aspen Skiing* was decided, and *Belfiore* was not decided until one and one-half years later.

 As for the restraint of trade allegations that the district court disposed of on the merits, we agree with Judge Glasser that no genuine dispute exists over whether the T–Route operators were treated preferentially. Our review of the record does not uncover "sufficient evidence favoring [Jericho News] for a jury to return a verdict for that party," *Law Firm of Daniel P. Foster v. Turner Broadcasting System, Inc.,* 844 F.2d 955, 959 (2d Cir. 1988), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); no material issue of fact exists concerning whether the Times and the newspaper wholesalers are acting in concert to drive the independents out of business.

Affirmed.