HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff,

v.

COLUMBIA CASUALTY COMPANY, Defendant.

No. 3:97CV01413.

United States District Court, D. Connecticut.

March 31, 2000.

Stuart D. Rosen, Bingham Dana, Hartford, CT, David M. Raim, William K. Perry, Carey G. Child, Chadbourne & Parke, Washington, DC, for Hartford Accident & Indemnity Co., plaintiffs.

David L. Belt, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, John Stephen Papa, Constance L. Epstein, Howard, Kohn, Sprague & Fitzgerald, Hartford, Robert W. Hammesfahr, Kristy L. Allen, Blatt, Hammesfahr & Eaton, Lori S. Nu-

gent, Blatt, Hammesfahr & Eaton, Chicago, IL, for Columbia Casualty Company, defendants.

### RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. # 74]

ARTERTON, District Judge.

In this action involving indemnity under reinsurance policies, Plaintiff Hartford Accident & Indemnity Company (Hartford) moves for summary judgment claiming that Columbia Casualty Company (Columbia) is collaterally estopped from litigating any of its defenses based on the arbitration decision resolving Hartford's claims under two other reinsurance policies, issued by Continental, another of its reinsurers, on the same claim. In the alternative, Hartford moves for summary judgment contending there exists no material issue of fact as to its claim that Columbia must indemnify Hartford on the Reichold Settlement under the "follow the settlements" provision contained in the relevant insurance certificates.

For the following reasons, Plaintiff's Motion for Summary Judgment [doc. # 74] is DENIED.

### Factual Background

Plaintiff Hartford, the reinsured or "ceding" insurer seeks indemnification from Columbia under two facultative reinsurance policies (Certificate Nos. # 2706163 and # 2706462)[1] covering the years 1977 and 1978 for a portion of the amount Hartford paid to settle a claim for environmental liabilities made by its insured, Reichold Chemicals, Inc. (the "Reichold Settlement"). Under these certificates, Columbia agreed to reinsure "Hartford for loss (indemnity) payments in excess of $500,000 per occurrence, up to a limit of $500,000 per occurrence" as well as expenses. *See* Pl.'s Loc. R. 9(c)(1) Stmt. ¶¶ 9, 10. The Certificates state: "All claims covered by this reinsurance when settled by the Company shall be binding on the Reinsurers, who shall be bound to pay their proportion of such settlements." Perry Aff. (June 17, 1999), Ex. 4 & 5, ¶ 5.

In October 1988, Reichold filed suit against Hartford seeking coverage of its environmental liabilities arising at more than 50 of its manufacturing sites around the country. From 1972 until 1985, Hartford had issued annual comprehensive general liability insurance policies. These policies provided a $1,000,000 indemnity limit for each occurrence and covered Reichold's legal expenses for defending any claim covered by the policy. The policy did not cover damage arising from the release of pollutants unless the release was "sudden and accidental." During the course of the lawsuit, Hartford and its counsel concluded that a 1977 fire at one of Reichold's chemical manufacturing facilities located in Columbia, Mississippi, known as the "Newsom Site" might satisfy the "sudden and accidental" provision and therefore the resulting contamination might be covered under Reichold's policy.[2] Notwithstanding the uncertainty about the contamination at the Newsom site and a possible defense based on Reichold's late notice, on the eve of trial in April 1995, Hartford and Reichold settled the coverage claim for $11,000,000, with $3,201,213 to be paid as an underlying expense, and $7,798,787 paid as indemnity. In return, Hartford obtained a release from Reichold for all sites. *See* Perry Aff. Ex. 51, Ex. 60. Hartford notified CNA Re, a management group within CNA Insurance Companies, formed in 1990s, that is responsible for administering, underwriting and responding to claims

---

1. In "facultative reinsurance," a ceding insurer purchases reinsurance for a part, or all, of a single insurance policy. In comparison, "treaty reinsurance" covers specified classes of a ceding insurer's policies.

2. There is much dispute as to whether the fire was severe enough to result in the amount of contamination found at the Newsom Site and whether the contamination of the Newsom Site resulted from the water used by the fire department to extinguish the fire or from subsequent burial of debris burned in the fire.

made under reinsurance contracts issued by CNA in the United States, of the Settlement via a reinsurance report. Hartford allotted the full $7,798,787 in indemnity to a single occurrence, the 1977 fire at the Newsom site, and in addition, defense costs of $1,200,000 for a total allocation of $8,998,787. Hartford did not allocate any portion of the indemnity to any other site because it believed there were no other "sudden and accidental" events confirmed at those sites.

Following payment of the settlement in three installments, Hartford sought indemnification in the amount of approximately $3,200,000 from Columbia under the 1977 and 1978 certificates, from Continental under the 1979 and 1980 certificates (Certificate Nos. # 3635801 and # 3636586), but did not seek further indemnification from a third reinsurer, Teeches[3] since Teeches had already paid its reinsurance obligation on a single occurrence basis through prior defense expense reimbursements. Hartford's claims for indemnification from Continental and Columbia were handled and reviewed by CNA Re. Thereafter, CNA Re sought and received further data and information from Hartford in connection with its assessment of these claims. On April 30 and May 1, 1997, CNA Re conducted an audit of Hartford's Reichold claim file.

In July 1997, Hartford initiated this action against Columbia in federal court claiming breach of contract (the 1977 and 1978 certificates) (Count One), breach of duty to "follow the fortunes" (Count Two), breach of duty to follow the settlements (Count Three), and breach of utmost good faith (Count Four). See Compl. (Doc. # 1). Simultaneously, Hartford demanded arbitration against Continental to collect on the reinsurance billings under the 1979 and 1980 certificates pursuant to those contracts' honorable engagement arbitration provision. Continental and Hartford

each selected one arbitrator who in turn selected the third "neutral" arbitrator. The 1977 and 1978 Columbia certificates contained no analogous arbitration provision, and Columbia declined Hartford's offer to submit the dispute over their 1977 and 1978 certificates to arbitration. Therefore, this litigation and the arbitration proceeded concurrently.

Hartford, Columbia and Continental agreed to coordinate discovery and maintain confidentiality during this litigation and the arbitration of the claims against Continental. Such arrangement reduced the expense and enhanced efficiency for the parties. At no time did the parties articulate or even discuss what effect, if any, the arbitration award based on the Continental claims would have on this litigation or vice versa. CNA Re and the same legal counsel represent Columbia in this action as represented Continental in the arbitration.

After discovery and briefing, the arbitration panel held a four day evidentiary hearing from February 23, 1999 through February 26, 1999. The arbitration panel heard live testimony, deposition testimony, reviewed exhibits, and heard arguments by counsel. In March 1999, the panel executed its unanimous final award ordering Continental to pay $3,297,048.018 to Hartford for the Reichold settlement. The arbitration award provides, without articulation of reasoning or findings that:

> The Panel having reviewed the evidence hereby rules as follows: 1. That the Respondent pay to the Claimant, the amount of the billings as respects the "Reichold–Newsom [sic] Site" claim, as presented to the Respondent, in the amount of $3,297,048.18 by March 17, 1999.

See Perry Aff. Ex. 56. The arbitrators denied Hartford's claim for costs and at-

---

3. The nature of the corporate relation alleged between Teeches and Reichold is unclear on this record. See Def.'s Loc. R. 9(c)(2) Stmt.

¶ 49; Pl.'s Mem. at 32 (referencing "Teeches, the Reichold-affiliated reinsurer").

torneys fees. On March 17, 1999, CNA Re paid the award. *See* Perry Aff. Ex. 69.

## Legal Standard

A motion for summary judgment may be granted only when there is no issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c), *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991). If, on the other hand, a reasonable finder of fact could return a verdict for the nonmoving party, there is a genuine factual dispute and summary judgment should not be granted. *See Zeevi v. Union Bank of Switzerland*, No. 89 Civ. 4637, 1992 WL 8347, at *4 (S.D.N.Y.1992). "[T]he trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir. 1994).

### 1. Collateral Estoppel

■ Hartford contends that Columbia should be estopped from relitigating here every affirmative defense since its privy Continental has already fully and fairly litigated these identical issues in the context of the arbitration. Since "[a] federal court must give a state court judgment the same preclusive effect the judgment would have under the law of the state in which the judgment was entered," *Ruiz v. Commissioner of the Department of Transportation of the City of New York*, 858 F.2d 898, 902 (2d Cir.1988), the governing collateral estoppel law is Connecticut, since the Continental–Hartford arbitration award was rendered in Connecticut. Collateral estoppel is that aspect of res judicata which is concerned with the effect of a final judgment on the subsequent litigation of a different cause of action involving some of the same legal or factual issues necessarily determined in a former action between the parties. "Collateral estoppel has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■ Under Connecticut law, a final arbitration award (even one never reviewed by any court) is accorded res judicata or collateral estoppel effect in much the same manner as a judgment of a court. *See, Corey v. Avco–Lycoming Division*, 163 Conn. 309, 317–318, 307 A.2d 155 (1972). Admittedly, there is much allure to finding that the factual issues implicated in this complex reinsurance action have already been resolved by the arbitration thereby obviating the need for further litigation in this Court. However, such an arbitration award only precludes relitigation of those factual or legal issues resolved against a party or one in privity with a party to the arbitration. Hartford concedes, as it must, that Columbia was not a party to the arbitration between Continental and Hartford since Columbia had no legal interest in Continental's certificates. The relevant Columbia reinsurance certificates contain no arbitration provision. Therefore, as Hartford acknowledged at oral argument, it could not have compelled Columbia to join the arbitration as a matter of law absent its consent.

■ Instead, Hartford contends that Columbia is in privity with Continental such that the arbitration award should estop Columbia from separately litigating its defenses under its separate certificates. Whether Columbia is in privity with Continental such that collateral estoppel should be applied must be decided under Connecticut law. As the Connecticut Supreme

Court has noted, privity "signifies a relationship between one who is a party of record and another who is a nonparty, but is sufficiently close to mandate the application of ... collateral estoppel." *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 813 n. 12, 695 A.2d 1010. (1997). "It is not a matter of form or rigid labels; rather it is a matter of substance. In determining whether privity exists, [courts] employ an analysis that focuses on the functional relationships of the parties." *Id.* at 813–814, 695 A.2d 1010.

While the concept of privity lacks precise definition, it has been held that "a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 596 A.2d 414 (1991). For example in *Jones*, the Connecticut Supreme Court permitted an insurance company to use collateral estoppel to bar the estate of a homicide victim (wife) from relitigating the issue of the criminal defendant's (husband) intent to cause injuries resulting in the victim's death which had been adjudicated in the defendant's criminal trial. The insurance company sought to avoid coverage under the husband's homeowner policy by invoking language excluding intentionally-caused injuries. The Connecticut Supreme Court focused on whether the parties, the husband and wife, shared the same legal right. Because the claims of the wife's estate were derivative of the contractual relationship between the husband and the insurer, her rights could only be asserted under the husband's insurance contract. Therefore, the Supreme Court reasoned that the husband and wife's estate were in privity because they necessarily shared the same legal interest. *Id.* at 304, 596 A.2d 414.

■ In this case, Hartford's contractual rights of reinsurance coverage from Columbia derive from the 1977 and 1978 certificates, which are wholly independent from and unrelated to the rights and obligations contained in the 1979 and 1980 certificates between Continental and Hartford. Therefore, the Court does not find that the mere similarity between the Columbia and Continental certificates demonstrates they share the same legal interest as would be required to demonstrate they are in privity, notwithstanding their common interest in examining Hartford's claim that its settlement with Reichold was reasonable and in good faith. "Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts." *Mazziotti v. Allstate Ins. Co.*, 240 Conn. at 814, 695 A.2d 1010.

■ Perhaps in recognition that privity cannot be established by contract, Hartford claims Columbia's privity with Continental based on the close functional relationship between Continental and as Columbia corporate relatives. *See* Def.'s Loc. R. 9(c)(2) Stmt., ¶ 13 ("Columbia is a wholly-owned subsidiary of Continental.") However, mere "independent corporate affiliation by itself, does not create a master/servant or principal/agent relationship." *See Usina Costa Pinto, S.A. v. Louis Dreyfus Sugar Co.*, 933 F.Supp. 1170 (S.D.N.Y.1996) (denying motion on collateral estoppel grounds, finding no privity between subsidiaries of same foreign corporation where defendant could not be compelled to arbitrate and arbitration did not encompass claims against defendant). Although Hartford does not identify any relevant Connecticut case law finding privity based on corporate affiliates, either parent-subsidiary or sister corporations, the Connecticut Supreme Court's decision in *Joe's Pizza* is instructive. In *Joe's Pizza,* the Connecticut Supreme Court reasoned that a closed corporation's action for coverage under its insurance policy was barred under the doctrine of res judicata by a prior judgment against the corporation's two sole shareholders under the same policy, where the corporation was operated essentially as a proprietorship. 236 Conn. at 868, 675 A.2d 441. The finding

of privity was based on the demonstration in the record that the two sole individual shareholders essentially ran the corporation as a proprietorship notwithstanding the corporate form. At oral argument, Hartford clarified that it is not claiming that Continental and Columbia are not separate legal entities, separately capitalized, nor that they failed to observe corporate formalities,[4] but instead contends that privity requires much less than would be required to pierce the corporate veil.

Hartford argues the privity of Columbia and Continental is demonstrated by their discovery coordination for Hartford's claims under the separate certificates in arbitration and in this Court. Hartford contends that the close functional relationship between Columbia and Casualty is reflected by the fact that Hartford's claims and billings for both the Columbia and Continental certificates were submitted, handled and investigated by the same CNA RE claims analyst, *see* Perry Aff. Ex. 30 at 2, and that identical legal counsel represents Columbia in this litigation as represented Continental in the Related Arbitration. While courts in this circuit have considered such facts in the privity analysis, such facts were not dispositive. *See Fulani v. Bentsen*, 862 F.Supp. 1140, 1148 (S.D.N.Y.1994) (noting fact that presidential candidate, her campaign committee and running mate were represented by same counsel as in earlier challenge brought by presidential candidate and campaign in prior election "further bolsters the conclusion that the interests represented in both actions are identical."). Similarly, in *Ruiz*, the Second Circuit observed that "[a]lthough not conclusive on the issue of privity, the fact that the parties in *Manno* and in this case had the same attorney in actions brought at about the same time is of 'singular significance.'" 858 F.2d at 903. In *Ruiz*, however, there was additional evidence that the plaintiffs had stipulated in federal court to amend the complaint in the state court action and to press their claims in that forum and had already received benefits from the state court action, which they sought now to avoid in federal court. *Id.* at 903–904. Therefore, while the fact that Columbia and Continental have been represented by CNA Re and the same counsel is considered in the privity analysis, the Court finds on this record where Columbia was not a party to the arbitration, and its 1977 and 1978 contracts were never considered by the arbitration panel, that Hartford has not carried its burden of demonstrating that Columbia is in privity with Continental.

Finally, the Court's decision to decline to apply collateral estoppel in these circumstances comports with the reality that Columbia never agreed to submit its contractual disputes with Hartford to arbitration. Hartford should not be permitted to achieve a result through the back door that it would not have been able to achieve through the front door, particularly where it is clear that the parties had no understanding that either this litigation or the arbitration would affect the other proceeding. *See Usina Costa Pinto S.A. v. Louis Dreyfus Sugar Co.*, 933 F.Supp. 1170, 1175 (S.D.N.Y.1996) ("There is no privity between [two affiliates] because [one of the affiliates] was not a signatory to the arbitration agreement and could not be compelled to arbitrate"). The parties' commendable agreement to coordinate

---

4. In its memorandum, Hartford intimated otherwise by suggesting that the Columbia certificates covering 1977 and 1978 were essentially renewed by the Continental certificates issued in 1979 and 1980 and that the same underwriter, Edward T. Kelley executed the 1980 certificate on behalf of Continental and signed the 1977 certificate on behalf of Columbia. *See* Perry Aff. and Ex. 40, at C1664. However, Hartford neglects to mention that Mr. Kelley left Columbia in January 1, 1978. Therefore, there is no evidence that Mr. Kelley endorsed the 1980 Continental certificate while employed by Columbia or that he endorsed the 1978 Columbia certificate while employed by Continental. *See* Kelley Dep., Ex. 14, at 17.

discovery in the arbitration and this matter in an effort to conserve resources is not to the contrary in that at no time did the parties discuss or agree that the result of this coordination would be used to affect the proceeding in Hartford's dual fora.

Moreover, even if the Court were to find Columbia in privity with Continental, which it does not, there are notable differences in the certificates, most notably the lack of the honorable engagement language and agreement to arbitrate in the Columbia certificates. As well, the pithy arbitration award makes it virtually impossible ascertain that all identical issues were addressed and ruled on by the arbitration panel, or to know how these different standards affected the panel's determination of its award's implicit, predicate findings rejecting Continental's defenses. To impose the results of one party's arbitration on another party who was under no obligation to arbitrate, without benefit of clear findings of fact and conclusions of law by the arbitration panel, is in the Court's view, an inappropriate application of the doctrine of collateral estoppel. Accordingly, Hartford's Motion for Summary Judgment based on collateral estoppel is DENIED.

## 2. "Follow the Settlements" Provision

In the alternative, Hartford moves for summary judgment contending that Columbia is obligated as a matter of law to "follow the settlements" provision in the certificates and to indemnify Hartford under its reinsurance certificates as there are no genuine disputes of material fact showing Hartford's settlement with Reichold was anything but reasonable and in good faith.

As a general rule, a "follow the settlements" provision requires the reinsurer to cover settlements made by the reinsured, as long as they are not fraudulent, collusive or made in bad faith. *See Aetna Cas. & Sur. Co. v. Home Ins. Co.,* 882 F.Supp. at 1346 (S.D.N.Y.1995). Under this reinsurance doctrine, the reinsurer cannot dispute good faith determinations that a risk was covered by the underlying insurance policy, *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.,* 979 F.2d 268, 280 (2d Cir.1992), or good faith interpretations of policy terms. As its label implies, the "follow the settlements" doctrine prevents facultative reinsurers "from second guessing good-faith settlements and obtaining de novo review of judgments of the reinsured's liability to its insured." *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1199 (3d Cir.1995). Therefore, the reinsurer's burden of showing bad faith on the reinsured's part is a high one: the reinsurer must show the reinsured's gross negligence, recklessness, bad faith, or that the settlement was not even arguably within the scope of the reinsurance coverage. *See Mentor Ins. Co. (U.K.) v. Norges Brannkasse,* 996 F.2d 506 (2d Cir.1993); *see also Commercial Union Ins. Co. v. Seven Provinces Ins. Co.,* 9 F.Supp.2d 49 (D.Mass.1998). Consequently, "subject to the requirements of good faith and a reasonable, business-like investigation, the ceding company may bind the reinsurer to follow its settlement fortunes when it concedes that a particular claim falls within the scope of coverage provided by the ceding company's policy." *Aetna Casualty & Sur. Co. v. Home Ins. Co.,* 882 F.Supp. at 1346–47 (S.D.N.Y.1995).

Therefore, the narrow question implicated by Hartford's motion for summary judgment is whether Columbia identifies any material issue of fact precluding the Court from applying the follow the settlement doctrine. Hartford bases its claim on the testimony of Mr. Ramsey, one of Columbia's employees, given during the Continental arbitration. Hartford contends that Mr. Ramsey acknowledged that it was at least plausible that the 1977 fire was the source of the contamination at the Newsom Site and that Hartford faced significant exposure under the Reichold poli-

cy. In opposition, Columbia contends Mr. Ramsey, as a lay witness, lacked the knowledge or expertise to make such a determination and in any event, his responses were only to hypothetical questions posed under cross-examination. At this juncture, the Court need not resolve whether Mr. Ramsey's testimony has the binding effect Hartford urges since there exists at least one additional material factual dispute which precludes summary judgment.

■ Columbia has demonstrated the existence of a material factual dispute as to whether Columbia is bound by the "follow the settlements" provision in light of the inferences of unreasonableness or self-service which could be drawn from Hartford's allocation of the entire Reichold settlement to the Newsom Site, enabling it to maximize the amount it could recover in reinsurance from Columbia. Columbia contends that from this record it can be inferred that Hartford's motivation in classifying the settlement as a single occurrence was to minimize the amount Hartford might be eligible to recover from Reichold via retrospective premium adjustments,[5] which would have been triggered if there had been multiple occurrences. By minimizing the amount of retrospective premium adjustments and structuring the settlement as a single occurrence, it is contended that Hartford could maximize the amount it could collect from its reinsurers since by virtue of settling on a one occurrence basis, Hartford not need exhaust its $500,000 deductible per multiple occurrence. Given this incentive, Columbia contends Hartford's self-serving motive in settling on a single occurrence basis may be reasonably inferred.

As evidence of Hartford's alleged gross negligence in settling Reichold's claim, Columbia relies on the fact that Hartford failed to retain an environmental expert before settling Reichold's claim even though it is customary practice to retain such an environmental expert for settlement and/or allocation purposes. *See* Hoffman Aff. ¶ 33 ("This means a competent insurer in these circumstances would employ an engineering firm to conduct a proper investigation"). In addition, Columbia contends that Hartford's motivation in maximizing its recovery under reinsurance is demonstrated by the December 17, 1991 memorandum from Jeffrey A. Wegner discussing the possibility of settling with Reichold which states: "[i]f we can secure some recovery under the retros and/or maximize recovery under the reinsurance in return for a settlement structure that may maximize their recovery from the excess carriers, both parties m[a]y benefit from the settlement." *See* Wegner Mem. To File (Dec. 17, 1991), Def.'s Ex. 90, at HFD020987. Hartford contends this memorandum fails to create an issue of material fact since this memorandum was written by an individual not responsible for final allocation of the settlement and he was subsequently reprimanded for referring to reinsurance in the context of settlement. Whether or not this memorandum alone would create a sufficient material fact need not be determined since Columbia also points to the fact that although Hartford only allocated the settlement to the Newsom Site, the Settlement also settled claims from over 50 additional sites, as well as Reichold's bad faith claims and resulted in a buy-out of Reichold's 31 policies. *See* Def.'s Loc. R. 9(c) Stmt. Ex. 58 (State court trial judge had estimated policy buy-out's value at $3,000,000), 64, 65 and 66. Columbia also proffers the opinion of its expert Dr. Glen Paulson who opines that "Hartford's failure to allocate any environmental liability to any of these other sites or facilities cannot be technically justified. In summary, I can find no technical or factual justification for Hartford's allocation of its

---

5. Under Reichold's policy with Hartford, "[t]he full premium is not charged at the time the policy is written. It's predicated upon either incurred or paid reserves and/or indemnity, and it's collected at a later date." Platteis Dep. at 102.

settlement with [Reichold] solely to one site, the Newsom Site, solely to one short period of years, 1977–1984, and significantly based on only one event, the 1977 fire." Paulson Aff. ¶ 33.

While mere negligence would not support a finding of bad faith sufficient to avoid application of the "follow the settlements" doctrine, the Court is unable to conclude on this disputed record, that Columbia's evidence, if credited, could not support a finding of gross negligence. *See North River*, 52 F.3d at 1216 ("[B]ad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract. The standard is not mere negligence, but gross negligence or recklessness."). While Hartford contends that its allocation of the entire settlement to the Newsom Site was completely reasonable, the above facts could support inferences from which a factfinder could conclude that Hartford's conduct manifested gross negligence or recklessness. Such disputes as to the proper inferences to be drawn from these facts and circumstances requires determination by a jury.

Accordingly, Hartford's motion for summary judgment premised on the "follow the settlements" provision in the relevant certificates must also be denied.

### Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Doc. # 74] is DENIED.

IT IS SO ORDERED.