*249 OPINION OF THE COURT
Hancock, Jr., J.
Plaintiffs,[1] formerly minority stockholders of Kirby Lumber Corp., have brought this action for damages against Santa Fe Industries and two of its subsidiaries — Santa Fe Resources and Kirby Lumber Corporation[2] — arising out of a Delaware short-form, freeze-out merger (Delaware Corporation Law § 253) by which Kirby became a wholly owned subsidiary of Santa Fe Industries. Plaintiffs’ appeal — from a dismissal of their complaint on a motion for summary judgment — presents the following questions: (1) whether the action is barred by the operation of res judicata or collateral estoppel because a similar action in Federal court resulted in dismissal on the merits (Green v Santa Fe Indus., 576 F Supp 269 (Duffy, J.), affd 742 F2d 1434, cert denied 469 US 917); (2) assuming that the action is not so barred, whether the actions of defendants as shown in the complaint and supporting papers could consti *250 tute a basis for recovery either for violations of the antifraud provisions of New York’s Martin Act (General Business Law § 352-c) or for breach of the majority stockholders’ fiduciary obligations to the minority under Delaware law.
We hold that plaintiffs’ action is not barred by the prior dismissal of the Greens’ Federal court action and that the courts below erred in dismissing the complaint on that ground; we hold, however, that plaintiffs have shown no basis for recovery under the Martin Act or Delaware common law, and that summary judgment dismissing the complaint should, therefore, have been granted for that reason. Accordingly, the order of the Appellate Division should be affirmed on that ground.
Procedural History and Facts as Shown In the Complaint and Supporting Papers
In 1974 Santa Fe Resources, Inc., a wholly owned subsidiary of Sante Fe Industries, Inc., owned 95% of the stock of Kirby. Pursuant to Delaware Corporation Law § 253, Santa Fe effected a short-form merger as a result of which Kirby became a wholly owned subsidiary of Santa Fe.[3] In compliance with the Delaware short-form merger statute, Santa Fe notified minority stockholders the day after the merger became effective, advised them of their right to an appraisal (Delaware Corporation Law §§ 253, 262), and offered them $150 per share in cash for their stock based on an appraisal performed by Morgan Stanley. Some minority stockholders, including the Borgs, although dissatisfied with the terms, accepted the offer. Others demanded appraisal. The findings of a court-appointed appraiser that the asset value of Kirby was $456 per share and the fair price per share was $254.40 at the time of the merger were upheld against subsequent challenges by the stockholders and the surviving corporation (Bell v Kirby Lbr. Corp., 395 A2d 730 [Del Ch 1978], affd 413 A2d 137 [Del 1980]).
The Greens (former stockholders in Kirby and nonappealing plaintiffs in this action) brought an action in Federal District Court, alleging that the freeze-out merger was violative of section 10 (b) of the Securities and Exchange Act of 1934 (15 *251 USC § 78j [b]) and rule 10b-5 of the Securities and Exchange Commission (17 CFR 240.10b-5), and that Santa Fe, as the majority stockholder, breached its fiduciary obligation to the minority stockholders by offering them an unfairly low price for their shares, in violation of Delaware common law. District Court held that the complaint failed to state a cause of action under Federal securities law, and declined to exercise pendent jurisdiction to adjudicate the State law claim (391 F Supp 849 [SD NY]).
The second Circuit Court of Appeals reversed and reinstated the complaint (533 F2d 1283), holding that where a complaint alleges, "in connection with a Delaware short-form mérger, that the majority has committed a breach of its fiduciary duty to deal fairly with minority shareholders by effecting the merger without any justifiable business purpose”, plaintiffs state a cause of action "under Rule 10b-5” (id., at 1291). The Supreme Court reversed (430 US 462) on the ground that "the transaction, if carried out as alleged in the complaint, was neither deceptive nor manipulative and, therefore, did not violate § 10(b) of the Act or Rule 10b-5.” (Id., at 474.)
Following the Supreme Court’s decision, the Greens amended their complaint, keeping the Delaware common-law claim and replacing the Federal cause of action with allegations that acts done in furtherance of the merger violated section 352-c of the Martin Act (General Business Law § 352-c). The Borgs, who had been aware of the Greens’ efforts at least from the 1976 decision of the Second Circuit, made no motion to intervene but did move, in 1979 and in 1980, for class certification. Both motions were denied (82 FRD 688; 88 FRD 575). On defendants’ motion for summary judgment dismissing the amended complaint, District Court held that plaintiffs failed to state a cause of action for breach of fiduciary obligations under Delaware law and found it unnecessary to address the Martin Act claims (576 F Supp 269 [SD NY], supra). The Second Circuit affirmed, without opinion (742 F2d 1434 [2d Cir], reh denied No. 83-9072 [May 25, 1984], supra), and the Supreme Court denied certiorari (469 US 917). The Second Circuit subsequently denied a motion for recall of the mandate (No. 83-9072 [Nov. 1, 1984], supra).
Plaintiffs — then both the Greens and the Borgs — brought this action in Supreme Court in 1977, alleging that the sole purpose of the merger was to freeze out public stockholders in Kirby at $150 per share, "a deliberately undervalued price, *252 unilaterally determined by Santa Fe * * * which knew from their own appraisals that the fair market value of the net assets and the stock was at least $772 per share” and that defendants, in an attempt to deter the minority stockholders from exercising their appraisal rights, mailed an informational package which contained, among other things, an appraisal by Morgan Stanley valuing the stock at $125 per share, but omitted certain material facts. This conduct, plaintiffs contend, was fraudulent, and in violation of General Business Law §§ 339-a and 352-c. As a second cause of action plaintiffs assert that by freezing out the minority "at an unconscionably low price” of $150 per share, "as against a fair value of at least $772, thereby misappropriating their beneficiaries’ property”, defendants "breached their fiduciary obligation to the minority stockholders” under Delaware common law.
This State action lay dormant until the unsuccessful termination of the Green litigation when the Second Circuit, in 1983, affirmed the dismissal of the amended complaint which had been filed in Federal court after the reversal by the Supreme Court. Plaintiffs then moved, and defendants cross-moved, for summary judgment. Special Term denied plaintiffs’ motion and granted defendants’ cross motion for summary judgment and dismissed the complaint, finding that the Borgs were in privity with the Greens during the Greens’ unsuccessful action in Federal court, and that because the Green and Borg claims were identical, the dismissal of the Greens’ action operated as a complete bar. The Appellate Division affirmed, without opinion (118 AD2d 1054), and leave to appeal was granted by our court (68 NY2d 612).
I
We first address defendants’ contention that plaintiffs’ claim was properly dismissed as barred by res judicata or collateral estoppel. Defendants rely on the final dismissal of the Greens’ Federal court action in which the Greens, as minority shareholders in Kirby, made claims identical in legal theory to those plaintiffs assert here. Since the Borgs were not parties to the Federal litigation, the question of whether they should be precluded by its unsuccessful outcome turns on whether they can be said to have been in privity with the Greens. We think it is clear that the Borgs were not in privity.
Preliminarily, we observe that the District Court granted summary judgment to defendants and dismissed the Greens’ *253 Federal court action holding, as a matter of Delaware law, that the Greens had no claim for a breach of fiduciary duty on the part of the majority stockholders (Green v Santa Fe Indus., 576 F Supp 269 [SD NY, Duffy, J.], supra). Without a showing of such breach of duty, the court held that there could be no claim under the Martin Act and declined to discuss that issue further (id., at 270). Thus, the dismissal of the Greens’ action involved the resolution of no factual issues, and it cannot be claimed that the Borgs are barred in their New York action under the principles of collateral estoppel from relitigating specific factual issues. If the Borgs are to be precluded at all, it can only be because their claim is barred under the principles of res judicata based on the dismissal on the law of the Greens’ action.
It is fundamental that a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them (see, Commissioners of State Ins. Fund v Low, 3 NY2d 590, 595; Matter of Shea, 309 NY 605, 616; 5 Weinstein-Korn-Miller, NY Civ Prac j| 5011.32, at 50-192). Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding (see, Israel v Wood Dolson Co., 1 NY2d 116, 118-120; Restatement [Second] of Judgments §§ 41, 42; 5 Weinstein-Korn-Miller, NY Civ Prac [j 5011.32). Thus, there can be privity to make a legal determination in a declaratory judgment action brought by a union binding in a subsequent action by a member (see, Weisz v Levitt, 59 AD2d 1002); to cause a judgment against an insured to have binding effect in a subsequent action against his liability insurer (see, Hinchey v Sellers, 7 NY2d 287, 295; Baldwin v Brooks, 83 AD2d 85, 87-89; Fadden v Cambridge Mut. Fire Ins. Co., 51 Misc 2d 858 [Cooke, J.], affd 27 AD2d 487); to make a judgment in an action brought by a trustee in bankruptcy a bar in a subsequent action by a creditor (see, Stissing Natl. Bank v Kaplan, 28 AD2d 1159, 1160); or to make a dismissal on the merits of a shareholders’ derivative action binding on other shareholders as members of a represented class so as to preclude them from bringing a similar action (see, Parkoff v General Tel. & Elecs. Corp., 53 NY2d 412, 415). Here, the Borgs cannot be said to have been barred as members of a class of shareholders. The Greens sued in their own behalf — not in a stockholders’ derivative action — and attempts at class certification were denied (82 FRD 688, 88 FRD 575, supra). The only relationship between the Greens *254 and the Borgs was that they owned separate blocks of stock in the same company. It is obvious, then, that privity of the traditional sort is not involved.
In addition to the conventional privity found in the foregoing cases, courts have also precluded parties from raising claims previously litigated when the party to be precluded can be said to have controlled the conduct of the prior action to further his own interests (see, 5 Weinstein-Korn-Miller, NY Civ Prac If 5011.33). It is this sort of privity which defendants assert here, relying principally on Watts v Swiss Bank Corp. (27 NY2d 270). Defendants contend that the Borgs, who were aware of the Greens’ lawsuit, at least from the date of the Second Circuit decision in 1976, were deeply involved in the Federal action, and that they monitored the proceedings and received reports from the Greens’ counsel (now the Borgs’ attorneys in this action) who, defendants claim, also represented the Borgs’ interests in the Federal court action in which they were not parties.
For several reasons, we reject defendants’ argument. First, Watts v Swiss Bank Corp. (27 NY2d 270, supra) is inapposite. There, both actions — the French action which was completed first and the New York action in which the French action was sought to be made binding — involved claims to the identical property, the proceeds of a joint bank account. Further, not only were the attorneys in the French and New York actions the same, but there was a practical identity of parties. Indeed, except for the substitution of Rose Lanari’s legatees as defendants in the French action and of the executor of her estate in the New York action, the opposing parties were at all times the same.
In this case, as contrasted with Watts, the claims asserted and the interests represented by the Borgs, are not in all respects identical to those in the Green Federal court action. Although the theories of recovery were the same for both the Greens and the Borgs, the stock was separately owned and the claims discrete. In addition, although counsel was the same for both the Greens and the Borgs, there is no indication that the prior action "was managed as [the Borgs] thought it should be” (Watts v Swiss Bank Corp., supra, at 278).
Moreover, even if it could be shown that during the Green litigation the Borgs were "not merely standing on the sidelines” (defendants’ brief, at 65), the fact that applying res judicata here would result in imposing the Federal legal *255 determination in a State court would be a consideration pointing against a finding of privity (see, Restatement [Second] of Judgments § 28, comment b; § 29, comment i). Claim preclusion, if applied, would not only foreclose the Borgs from presenting their theory in a different forum; it would prevent our court from considering the applicable rule and performing our function as a court of law (Restatement [Second] of Judgments § 28, comment b; § 29, comment i).
In any event, whether the Borgs were in privity with the Greens in the Federal litigation is a question of fact, which would preclude summary judgment (see, Watts v Swiss Bank Corp., supra, at 277).
II
We turn to the merits of plaintiffs’[4] claims. From the complaint and the submissions on the cross motions, it appears that plaintiffs’ claims are predicated on the following alleged facts: that without prior notice to plaintiffs or the other stockholders, Forest Products, Inc., a subsidiary of Santa Fe, was merged into Kirby and the minority stockholders of Kirby were frozen out of the surviving corporation; that the merger did not have a corporate purpose but was consummated solely to freeze out the minority stockholders; that the cash freeze-out price of $150 per share was "a deliberately undervalued price, unilaterally determined by Santa Fe * * * which knew from their own appraisals that the fair market value of the net assets and the stock was at least $772 per share”; and that, in an effort to lull the minority stockholders into accepting their offer of $150 per share, the defendants mailed an information statement to plaintiffs and the other minority stockholders which omitted material facts. Among the claimed "material omissions” are the following: that in June 1974, Morgan Stanley had suggested to Santa Fe that it offer the minority stockholders between $175 and $200 per share; that Santa Fe "conceded that they had never seen a more thorough appraisal (than that of W.D. Davis of Appraisal Associates [valuing the market value of Kirby’s assets at $320,000,000])”; that Kirby’s management had made expansion plans which "would 'promote phenomenal growth in the company’s annual operating income’ ” within the next five *256 years; and that Kirby had realized "great capital appreciation” in its land and stumpage.
Initially, the question whether plaintiffs have stated a basis for recovery for defendants’ alleged violation of the Martin Act is decided by our holding today in CPC Intl. v McKesson Corp. (70 NY2d 268) that there is no implied private action for fraudulent acts under section 352-c of the General Business Law. For that reason, defendants’ motion for summary judgment was properly granted as to this cause of action, and we need not reach the other Martin Act issues raised by the parties.
Whether plaintiffs’ second cause of action for breach of a fiduciary duty was, likewise, properly dismissed, depends on an analysis of Delaware law. As noted, Supreme Court, in granting summary judgment, and the Appellate Division in its affirmance, held that plaintiffs’ claim was entirely precluded by the prior dismissal of the Green Federal court action. In effect, this grant of summary judgment based upon the Green dismissal is an adoption by our lower courts of the legal conclusion reached by the Federal courts in their grant of summary judgment and dismissal of the Greens’ Federal court action that there was no breach of fiduciary duty under Delaware law (Green v Santa Fe Indus., 576 F Supp 269, supra). Based upon an independent analysis, we reach the same conclusion as District Judge Duffy — that plaintiffs have no claim against Santa Fe under Delaware common law.
At the time of the merger in 1974, under Delaware law, a parent corporation, which owned 90% or more of the stock of a subsidiary, could merge with that subsidiary without advance notice or consent of the minority stockholders upon approval by the parent’s board of directors (see, Delaware Corporation Law §§ 253, 262; see also, Santa Fe Indus, v Green, 430 US 462, 465, supra). No corporate purpose was statutorily required for a short-form merger, rather the very purpose of such mergers was to "provide the parent corporation with a means of eliminating the minority shareholder’s interest in the enterprise” (Stauffer v Standard Brands, 41 Del Ch 7, 9-10, 187 A2d 78, 80 [Del 1962]). Upon approval of the merger, the parent corporation was required to make payment in cash to the minority for their stock (see, Delaware Corporation Law § 253 [a]; Santa Fe Indus. v Green, supra). If a minority stockholder was dissatisfied with the offer made by the parent corporation for his shares, he had the right to have *257 a court-appointed appraiser determine the fair value and the right to receive a decree from the Delaware Court of Chancery ordering the surviving corporation to pay for his shares at the resulting appraised value (see, Delaware Corporation Law § 253 [a]; § 262; Santa Fe Indus, v Green, supra, at 465-466).
It is not disputed that the merger here was in all respects permissible under the Delaware Corporation Law. Plaintiffs assert no statutory violation. They contend, however, despite defendants’ compliance with the statute, that under case law existing at the time of the merger in 1974, an allegation that the majority effected the merger solely for the purpose of freezing out the minority and without any business purpose was, without more, a sufficient basis for a claim of breach of fiduciary duty. Plaintiffs base their claim on the so-called "business purpose” rule established by three Delaware decisions (Singer v Magnavox Co., 380 A2d 969 [Del 1977]; Tanzer v International Gen. Indus., 379 A2d 1121 [Del 1977]; Roland Intl. Corp. v Najjar, 407 A2d 1032 [Del 1979]) which stated the law in Delaware until expressly overruled by the Delaware Supreme Court on February 1, 1983 (Weinberger v UOP, Inc., 457 A2d 701 [Del 1983]). Judge Duffy, it is noted, refused to apply the Singer-Tanzer-Roland "business purpose” rule which the Weinberger court had rejected. Instead, he applied the previously existing Delaware rule as stated in Stauffer v Standard Brands (41 Del Ch 7, 187 A2d 78, supra) and Greene & Co. v Schenley Indus. (281 A2d 30 [Del Ch 1971]) which, he noted, the Weinberger court had expressly readopted and under which "no corporate purpose is required under Delaware’s short-form merger statute, and * * * minority shareholders are limited to an appraisal remedy” (Green v Sante Fe Indus., 576 F Supp 269, 270-271, supra). For reasons which follow, we agree.
Plaintiffs argue, pointing to language in the Weinberger opinion, that because the merger took place in 1974 their claim should be governed by Singer-Tanzer-Roland and not, as held by Judge Duffy, by the prior cases of Stauffer and Greene & Co. We disagree. The "savings clause” language in the Weinberger opinion on which plaintiffs rely is as follows: "Obviously, there are other litigants, like the plaintiff, who abjured an appraisal and whose rights to challenge the element of fair value must be preserved. Accordingly, the quasi-appraisal remedy we grant the plaintiff here will apply only to * * * (4) any case challenging a cash-out merger, the effective *258 date of which is on or before February 1, 1983” (457 A2d, at 714).
Plaintiffs, construing the language of the Weinberger opinion literally, contend that they should have the benefit of the Singer-Tanzer-Roland rule because the merger was prior to the February 1, 1983 cut-off date. We do not believe the Delaware Supreme Court had such intention. We interpret the savings clause language in the Weinberger opinion as intended only to benefit those plaintiffs "who abjured an appraisal” in reliance on the so-called "business purpose” rule first adopted by Singer in 1977. Because the rule was not in existence at the time of the Kirby-Forest Products merger, plaintiffs could not have given up their appraisal rights in reliance on that rule. We agree with Judge Duffy’s reasoning that: "[a]lthough the Weinberger court, appeared to limit the reach of its holding to all mergers effected before 1983, the policy considerations behind the court’s decision to allow certain plaintiffs to continue to seek remedies other than appraisal would not be promoted by a blind application of the court’s provision for retroactive relief. Further, plaintiffs would reap a windfall that the Delaware Supreme Court could not have intended” (576 F Supp 269, 271, supra).
Plaintiffs argue, nevertheless, that even without the benefit of the Singer-Tanzer-Roland "business purpose” rule, they have presented a sufficient basis for denial of summary judgment under the prior Delaware decisions (Stauffer v Standard Brands, supra; Greene & Co. v Schenley Indus., supra) as interpreted in the more recent decisions of the Delaware Supreme Court (see, Weinberger v UOP, Inc., supra; Rabkin v Hunt Chem. Corp., 498 A2d 1099 [Del 1985]). Again, we disagree.
As we read the post-Weinberger Delaware case law, in the event of a properly conducted cash-out merger (Delaware Corporation Law § 253) — even one effected solely for the purpose of freezing out the minority stockholders — the minority has no claim beyond its statutory right to seek an appraisal of its shares absent a demonstration of "fraud or blatant overreaching” (Greene & Co. v Schenley Indus., supra, at 35). The rationale for limiting minority stockholders to their appraisal rights in the ordinary case, a Delaware court has noted, is "the policy of the courts * * * to permit contracting corporations to take advantage of statutory devices for corporate consolidation furnished by legislative act” (Bruce v Bruce Co., *259 40 Del Ch 80, 82, 174 A2d 29, 30 [1961]), and "reasons for a merger or the business necessity behind it are not matters for judicial determination” (40 Del Ch, at 82, 174 A2d, at 30). In its most recent pronouncement on the rights of minority stockholders after a freeze-out merger, however, the Delaware Supreme Court in Rabkin v Hunt Chem. Corp. (supra, at 1104), emphasized that while in Weinberger it abrogated Singer, Tanzer and Roland in favor of the prior rule in Stauffer and Greene & Co., it did not intend any limitation on the historic powers of the Chancellor to grant appropriate equitable relief. Quoting the Weinberger opinion, the court observed that the appraisal remedy " 'may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved’ ” (Rabkin v Hunt Chem. Corp., supra, at 1104). Thus, we must apply the rule in Stauffer and Greene & Co. in light of the caveats expressed in Weinberger and Rabkin.
Upon examination of the complaint, affidavits and other documents in the record, including the excerpts from the examination before trial of plaintiff Cecil R. Borg, we conclude that there is no such demonstration of "fraud or blatant overreaching” as would bring the case within the exception to the general rule making the statutory appraisal proceeding plaintiffs’ exclusive remedy. There is no claim of any misrepresentation or false statement or any specific conduct which could constitute actual fraud. Plaintiffs were provided with the appraisal of the asset value of the corporation and copies of the Morgan Stanley appraisal of the stock as being worth $125 per share. Plaintiffs consulted their attorneys and immediately formed their own conclusions that the Morgan Stanley appraisal[5] and the $150 per share offer were unreasonable and that the appraisal was wrong because it gave far too little weight to the asset value of $320,000,000. Moreover, it appears that plaintiffs’ decision not to seek an appraisal was based on their judgment that to do so would be too costly and time-consuming rather than on any misleading or deceptive conduct or on any withholding of information by defendants.
*260 Rabkin v Hunt Chem. Corp. (supra) relied on by plaintiffs, is readily distinguished. There, Olin Corporation bought 63.4% of the stock in Hunt for $25 per share and agreed with the seller to pay $25 per share for the rest of the stock if Olin acquired the remainder within a year. The defendants waited one year and one day from the date of the contract and then, as majority stockholders, froze out the minority, offering only $20 per share. The claim in Rabkin was not that the $20 per share being offered following the cash-out merger was unreasonably low, but that the minority shareholders were deprived of "the $25 per share guaranteed by the one year commitment, which they claim was unfairly denied them by [defendant’s] manipulations” (id., at 1105). Indeed, the Delaware Supreme Court specifically noted that "plaintiffs are not arguing questions of valuation which are the traditional subjects of an appraisal” (id., at 1105). The court also observed that a claim of breach of faith and conflict of interest was lodged against individual officers and directors who had acted in dual capacities as directors of both the parent and the subsidiary corporation, and that "[t]hese are issues which an appraisal cannot address and at this juncture are matters that cannot be resolved by a motion to dismiss” (id., at 1106).
Here, in contrast to Rabkin, all of the actions with which defendant corporations are charged relate to price; there are no claims asserted against individual defendants based on dual representation; and it cannot be said that the "defendants are charged with bad faith which goes beyond issues of 'mere inadequacy of price’. Cole v National Cash Credit Association, Del. Ch., 156 A. 183, 187-88 [1931]” (id., at 1107). In short, in Rabkin there was good reason to deny the dismissal motion addressed to plaintiffs’ complaint because it appeared from the allegations that appraisal might not be an adequate remedy. Here, on analysis not only of plaintiffs’ complaint but of the factual material submitted to Supreme Court on the motion for summary judgment, it appears that an appraisal, if plaintiffs had sought one, would have completely obviated their objections to the unreasonably low offer.
Nor does anything in Weinberger call for a different result. As in Rabkin the complaint was based, in large measure, on the breach of faith of directors acting in a dual capacity and, again, like Rabkin and unlike the case at bar, there were specific allegations of fraud, including the claim that a critical memorandum prepared by two directors of UOP, the merged company from which plaintiffs were frozen out, had been *261 deliberately withheld from the other UOP directors and given exclusively to Signal,[6] one of the defendants and the majority stockholder of UOP.
In sum, this is a case involving one issue, the price of Kirby stock. To be sure, there are conclusory allegations of fraud and overreaching. But the record shows that plaintiffs had the necessary information on which they could and did make an informed judgment as to the fairness of the offer, that after consulting their lawyers and others they decided to forego their appraisal rights and accept the offered price, and that their acceptance of the offer at that price was not made in reliance on any deception or omission on the part of defendants but was, on the contrary, the result of an informed judgment that resorting to an appraisal proceeding would be too costly and time-consuming.
Because we conclude that the order should be affirmed, questions pertaining to the denial of plaintiffs’ motions for class action certification are academic.
The order should, therefore, be affirmed with costs.
Chief Judge Wachtler and Judges Simons, Alexander, Titone and Bellacosa concur; Judge Kaye taking no part.
Order affirmed, with costs.

. The action was commenced by S. William Green, Evelyn Green and Cynthia Colin as executors of the estate of Louis A. Green, deceased, and Evelyn Green (the Greens) and Cecil R. Borg, and Janette Dean, trustees under the will of Myron Borg, Jr., and Cecil R. Borg, individually (the Borgs).
Special Term dismissed the complaint of all plaintiffs and the Appellate Division affirmed. Only the Borgs have appealed from the Appellate Division order.

. For the purpose of this opinion, the name Santa Fe will be used to refer to both Santa Fe Industries and its wholly owned subsidiary Santa Fe Resources, which actually held 95% of Kirby’s stock.

. Santa Fe Resources, Inc. transferred its Kirby stock and cash to a newly formed subsidiary corporation, Forest Products, Inc., in exchange for 100% of Forest Products stock. Forest Products was then merged into Kirby, with Kirby the surviving corporation. The cash transferred from Santa Fe Resources was used to buy out the minority stockholders.

. Since only the Borgs are before the court on this appeal (see, n 1, supra), "plaintiffs” will be used to refer only to the Borgs.

. The Morgan Stanley appraisal assigned the asset value a 5% weight in determining the fair value of a share of Kirby stock. In Bell v Kirby Lbr. Corp. (413 A2d 137, 147 [Del]), the Delaware Supreme Court stated "we are satisfied that the Morgan Stanley appraisal is the product of an orderly and logical deductive process in accordance with approved methodology properly accepted by the Appraiser and the Vice-Chancellor.”

. The emphasis which the Delaware court placed on the withholding of this memorandum from the other UOP directors is evident from the following excerpt in the Weinberger opinion:
"The Arledge-Chitiea report speaks for itself in supporting the Chancellor’s finding that a price of up to $24 was a 'good investment’ for Signal. It shows that a return on the investment at $21 would be 15.7% versus 15.5% at $24 per share. * * *
"Certainly, this was a matter of material significance to UOP and its shareholders. Since the study was prepared by two UOP directors, using UOP information for the exclusive benefit of Signal, and nothing whatever was done to disclose it to the outside UOP directors or the minority shareholders, a question of breach of fiduciary duty arises. This problem occurs because there were common Signal-UOP directors participating, at least to some extent, in the UOP board’s decision-making processes without full disclosure of the conflicts they faced.” (Weinberger v UOP, Inc., 457 A2d 701, 709 [Del].)