**Thomas HELLMAN, Plaintiff,**

v.

**Laura HOENIG, Kathyrn L. Hoenig, Susan Hoenig, and Robert Spiegel, as executors of the Estate of Ronald H. Hoenig, deceased, Defendants.**

**No. 97 Civ. 2625(MP).**

United States District Court,
S.D. New York.

Jan. 13, 1998.

---

Norman A. Kaplan, Great Neck, NY., for Plaintiff.

Shereff, Friedman, Hoffman & Goodman, LLP (Benjamin E. Rosenberg, of counsel), New York City, for Defendants.

### DECISION and OPINION

MILTON POLLACK, Senior District Judge.

The defendants, executors of the Estate of Ronald H. Hoenig, deceased, have moved for

dismissal of all claims asserted herein based on the *res judicata* effect of a previously litigated state action (hereafter the "State Action"). Alternatively, defendants have moved for dismissal of the Second, Third, Fourth and Fifth claims asserted in this Federal Action for failure to state a claim upon which relief may be granted.

The *res judicata* asserted is grounded in the resolution in favor of the defendants in the previous State Action with whom the decedent was in privity. The State Action was initiated by the same plaintiff as in this matter, on essentially the same subject matter and the same grievances as are found in the claims asserted herein.

For the reasons set forth below, the result of the State Action has precluded, by the doctrine of *res judicata*, the assertion of plaintiffs claims against the decedent.

*Background*

Hoenig & Co., Inc. (hereafter "the Company") is a registered broker-dealer and New York Stock Exchange member providing brokerage, marketing and other services to institutional clients. Ronald H. Hoenig was its founder and President, Chief Executive Officer, and Chairman of the Board of Directors until his death on October 12, 1995.

Hellman, the plaintiff herein and in the State Action, joined the Company as a senior officer in 1974 and became a director in or about July, 1986, at which time the Company was a wholly owned subsidiary of the Security Pacific National Bank (hereafter "Security Pacific"). By written agreement dated as of November 24, 1987, Security Pacific, the Company, and fifteen individuals, one of whom was the plaintiff and one of whom was Ronald H. Hoenig, entered into a Stock Purchase Agreement whereby the fifteen individuals purchased the stock of the Company from Security Pacific. Also by written agreement dated as of November 24, 1987, the fifteen shareholders of the Company entered into a Stockholders' Agreement setting forth the rights of the purchasers *inter sese.*

Hellman continued as an officer and director of the Company until the Spring of 1989 when he resigned from both positions. On October 26, 1989, the Company and cer-

tain individuals who had been part of the original group of purchasers from Security Pacific, including Ronald H. Hoenig, redeemed and purchased Hellman's stock interest.

In November, 1991, a new company was organized under the name of Hoenig Group, Inc. (hereafter "Group") whose shares are publicly traded. Group purchased all of the outstanding stock of the Company, continuing the Company as a wholly owned subsidiary of Group. Ronald H. Hoenig functioned in both corporations as the President, Chief Executive Officer, and Chairman of the Board of Directors until his death.

On September 21, 1995, Hellman instituted the State Action referred to above in the New York State Supreme Court, Westchester County, naming as defendants the Company, Group and seven directors and officers of both corporations, including Ronald H. Hoenig. Having passed away, neither Ronald H. Hoenig nor his estate thereafter were served with process in the State Action.

The complaint stated that in 1987, defendant Ronald H. Hoenig entered into a written contract with plaintiff providing for a leveraged buy out of the Company from Security Pacific, the funds to come from a bank loan and cash investments from several investors including plaintiff and that the plaintiff had never been provided with the shares of the Company to which he was entitled. The relief sought from all defendants was specific performance of the contract, that defendants be required to transfer to plaintiff the shares of the Company and their dividends.

The individual and corporate defendants in the State Action except Ronald H. Hoenig moved for dismissal of the suit. The motion was granted with respect to Ronald H. Hoenig's individual codefendants—the other officers and directors of the Company and Group—and the case was dismissed as to them pursuant to New York's CPLR § 3211(a)(7) for failure to state a cause of action. No appeal by the plaintiff was ever taken from that Order of dismissal.

The corporate defendants, viz., the Company and Group, answered the original com-

plaint and moved for summary judgment on various grounds, including, but not limited to the affirmative defenses that the cause of action asserted was time-barred by a six year statute of limitations pursuant to New York's CPLR § 213[2].

Hellman responded with an amended complaint on March 6, 1996 against only the two corporations, alleging that: (1) the Company and Group had failed to deliver to him the shares of the Company he had purchased from Security Pacific; (2) that the corporate defendants had failed to provide him with certain information before his purchase from Security Pacific; (3) that he was insufficiently compensated for his shares sold by him on October 26, 1989; (4) that Group had converted his shares when it had acquired the Company's stock in November, 1991; (5) that the Company had converted his shares when it redeemed his shares; and (6) that false statements made to plaintiff on or about November 24, 1987 in connection with the Stock Purchase Agreement with Security Pacific had constituted fraud.

After filing an answer to the amended complaint, the corporate defendants again moved for summary judgment in their favor which was granted and the State Action was dismissed. The state court found that the "First" cause of action was asserted against the wrong defendants since the written purchase agreement dated as of November 24, 1987, required Security Pacific, and not the Company, to deliver the shares of stock purchased by the fifteen individuals and that all of the alleged causes of action, including the "First," were time-barred by the applicable periods of limitation.

Plaintiff appealed from the Order and Judgment dismissing the causes of action asserted in their amended complaint except as to the "First" and "Second" causes of action which he did not challenge on appeal.

*The Complaint Herein*

On April 14, 1997, during the pendency of the appeal from the State Action, the plaintiff filed the instant complaint (hereafter the "Federal Complaint") naming as defendants herein, only the executors of the Estate of Ronald H. Hoenig. The Federal Complaint asserts five claims:

1. Failure of the decedent to properly calculate and pay plaintiff the correct value of his stock interest in the Company when the Company redeemed plaintiff's stock interest on October 26, 1989;

2. Breach of an oral agreement made in 1987 to properly calculate and pay plaintiff the correct value of his stock interest in the Company;

3. Demand for an accounting from decedent's estate as a constructive trustee of the plaintiff;

4. Breach of fiduciary duty by the decedent's estate as a resulting trustee of plaintiff's shares in the Company and for an accounting;

5. Fraud of decedent by false statements in connection with plaintiff's purchase from Security Pacific on November 24, 1987 of plaintiff's 13.6% stock interest in Company.

The executors of the Estate of Ronald H. Hoenig have moved to dismiss the Federal Complaint on the ground of the *res judicata* effect of the proceedings in the State Action or alternatively to dismiss the "Second", "Third", "Fourth" and "Fifth" claims set forth herein for failure to assert sufficiently a claim on which relief can be granted.

The dismissal of the purported causes of action asserted in the State Action against the individual defendants which was not appealed by the plaintiff and the dismissals of the causes of action asserted against the corporate defendants, namely the Company and the Group, which were appealed, are now final adjudications. On November 28, 1997, the New York Appellate Division of the Supreme Court unanimously affirmed the Order and Judgment of the New York Supreme Court, Westchester County in all respects appealed by the plaintiff terminating all claims asserted against the individual and corporate defendants in the State Action.[1]

---

**1.** The record on appeal and the briefs of the parties on the appeal of the State Action were supplied at this Court's request and are made part of the record herein.

### Discussion

 Res Judicata, or claim preclusion, allows for the conclusive resolution of disputes, and prevents "multiple lawsuits, conserves judicial resources, and . . . minimiz[es] the possibility of inconsistent decisions." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 922 F.2d 164, 168 (2d Cir.1991) (quoting *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979)). Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

 "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Thus, this Court's analysis of the preclusive effect of the State Action is governed by New York law.

 Under New York law, "[t]he doctrine of *res judicata*, or claim preclusion, provides that 'as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action.'" *In the Matter of Field Home–Holy Comforter v. DeBuono*, 657 N.Y.S.2d 943, 944 (2d Dep't.1997) (quoting *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979)). Further, New York law has adopted a "transactional approach to *res judicata*, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir .1994); *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.").

In parsing this prevailing New York law, the Orders and Judgment in the State Action bar the claims set forth in the Federal Complaint since it is shown that:

(1) The Orders and Judgment in the State Action are orders and judgments made "on the merits;"

(2) The parties are identical to, or are in privity with, the parties in the State Action; and

(3) The claims under present consideration arose "out of the same factual grouping as an earlier litigated claim."

Plaintiff does not contest that the claims asserted in the Federal Complaint arose out of the same "factual grouping" as the State Action. The only issue currently before this Court is whether the decedent is in privity with the individual defendants who were dismissed from the State Action pursuant to New York's CPLR § 3211(7) for failure to state a cause of action against them or the corporate defendants in the State Action who obtained a judgment of dismissal on a time bar of the claims asserted, or both, and whether the issues were decided "on the merits" in the State Action.

### 1. *Privity*

 In order to establish privity under New York law, "the connection between the parties must be such that the interests of the nonparty can be said to have been represented at the prior proceeding." *Green v. Santa Fe Industries, Inc.*, 70 N.Y.2d 244, 253, 519 N.Y.S.2d 793, 514 N.E.2d 105 (1987); *see also Carpenter v. Fleet/Norstar Bank*, 1992 WL 349771, at *1 (S.D.N.Y.1992) ("where the interests of a nonparty shareholder or corporate officer were adequately represented by the corporation in the previous action, and where that shareholder/officer actively participated in that previous litigation, the parties are in privity and *res judicata* applies."). Further, "[p]rivity has also been found where a person so controlled the conduct of the prior litigation in which they were interested such that the result is *res judicata* against them." *Tamily v. General Contracting*

*Corp.*, 210 A.D.2d 564, 620 N.Y.S.2d 506, 509 (3d Dep't 1994) (*citing Green v. Santa Fe Industries,* 70 N.Y.2d 244, 254, 519 N.Y.S.2d 793, 514 N.E.2d 105).

■ The requirements for a finding of privity for the purposes of *res judicata* are satisfied here. Throughout the course of the State Action, the interests of the decedent and the individual and corporate defendants were identical. The decedent, was the founder, eponym, principal shareholder, Chief Executive Officer and Chairman of the Board of Directors of both the Company and Group when he was named as one of the defendants and was a party as such until his death. According to plaintiff's own allegations, the decedent "controlled" the Company. Throughout the pendency of the litigation the decedent was the largest shareholder of Group, holding between approximately 13% and 19% of its shares. The other individual defendants were all co-officers and co-directors of the decedent who actively participated in the transactions at issue.

Moreover, by virtue of the inextricable ties which existed between the decedent and both the individual and corporate defendants, Ronald H. Hoenig and his estate exercised a large degree of control over the State Action. Kathryn Hoenig, one of the executors of the estate and named defendants in the Federal Action, was and remains general counsel of the corporate defendants who defended the State Action; she corresponded with the plaintiff's counsel before the State Action was filed and supervised the litigation including the identical interests of the decedent in the Company and Group.

Under similar circumstances, courts have found that corporate defendants and their directors, officers and large shareholders are in privity because of the identity of interests and close relationship between them. *See, e.g., Sterling Doubleday Enter. v. Marro,* 656 N.Y.S.2d 676, 677 (2d Dep't 1997) (default judgment against closely-held corporation had *res judicata* effects on shareholders and officers of corporation because individual defendants together held offices of president, vice-president, secretary, and treasurer of the corporation, constituted a majority of the shareholders and directors of the corporation, and had control of the litigation in the default judgment); *see also Fox v. Maulding,* 112 F.3d 453, 459–60 (10th Cir.1997) (dismissing plaintiff's claims against a corporate officer and director because the plaintiff had failed to file the claims in a prior state proceeding between the plaintiff and the corporation arising out of the same transactions, and the actions complained of arose out of the defendant's position as an officer and director of the corporation); *Pedrina v. Chun,* 97 F.3d 1296, 1302 (9th Cir.1996) (corporate officers named in RICO action were in privity with corporation that was party to earlier action because the officers stood accused of participating in the same wrongdoing that the corporation stood accused of in the earlier action); *In re Teltronics Services, Inc.,* 762 F.2d 185, 189–91 (2d Cir.1985) (plaintiff—the founder, president, chairman of the board and 15–20% shareholder of a corporation—barred by *res judicata* where corporation has already brought suit against the same defendants and plaintiff had an active role in the prior litigation).

Plaintiff argues that there is no privity between the individual and corporate defendants in the State Action and the decedent because privity "denotes a mutual or successive relationship to the same right of property." *Weiner v. Greyhound Bus Lines,* 55 A.D.2d 189, 389 N.Y.S.2d 884, 887 (2nd Dep't 1976) (*quoting Bigelow v. Old Dominion Copper Mining & Smelting Co.,* 225 U.S. 111, 129, 32 S.Ct. 641, 643, 56 L.Ed. 1009 (1912)). The decedent, according to the plaintiff, does not fit this strict definition and allegedly therefore cannot claim privity with the individual or corporate defendants in the State Action. The identical character of the interests of the decedent, his co-directors and officers, and the two corporations preclude plaintiff's argument. The issues were precluded at the same time for all of the directors, officers and shareholders, including Ronald H. Hoenig, named as a defendant in the original state complaint prior to the filing of the original and amended state complaints of the suit against the corporations.

The New York courts have recognized that privity is an "amorphous term." *Weiner,* 389

N.Y.S.2d at 887. Accordingly, an examination of the relevant New York law reveals a willingness amongst the courts to find privity in a multitude of relationships, many of which extend beyond the definition cited by the plaintiff. *See Ferris v. Cuevas,* 118 F.3d 122, 127 n. 6 (2d Cir.1997) (describing a variety of relationships in which New York courts have recognized "privity" amongst parties for the purposes of *res judicata* ). As set forth above, standards of privity for the purposes of *res judicata* are satisfied by the identity of interests between the individual and corporate defendants in the State Action and the decedent, the adequacy of representation in the State Action, and the degree of control necessarily exercised on behalf of the decedent in the State Action.

### 2. *Final judgment on the merits*

Plaintiff further argues that the relevant issues of law as to the decedent were not disposed of by a final judgment relied on by the moving parties on the merits in the State Action and therefore *res judicata* does not apply to the identical claims against the decedent asserted in plaintiff's Federal Complaint.

■ First, the plaintiff notes that the State Action never determined while he was alive that the action against the decedent was time barred, nor could the court have made this determination had a claim against the decedent been asserted. In support of this contention, The plaintiff cites New York's CPLR § 210, which tolls the statute of limitations against a decedent's estate for eighteen months from the date of death. The decedent died on October 12, 1995, allegedly before the period of limitations had run against the estate. It had run against the identical interests of the decedent's co-directors and co-officers, and the two corporations. However, the estate was entitled to the benefit of the bar against those identical interests.

■ Alternatively, The plaintiff alleges as a last attempt to reach the estate that the underlying causes of actions in Federal Action are different from those asserted in the State Action and, therefore, the State Action did not give a ruling on the merits with respect to the claims asserted in the Federal Action. However, the original and amended complaints in the two suits cover the same ground and allege essentially the same grievances. A comparison of the amended state complaint and the Federal Complaint reveals that four of the five causes of action set forth in the Federal Complaint are taken largely verbatim from the amended state complaint, with the principle difference being that the amended state complaint's reference to the corporate defendants have been replaced by references to the decedent.

Plaintiff's arguments are based on a fundamental misconception of *res judicata.* Under New York law, the court issuing the first judgment need not have ruled on every issue that might have been raised. Pursuant to the "transactional approach" adopted by the Court of Appeals, *res judicata* also operates to preclude the litigation of matters that *should or could have* been or were raised in a prior proceeding arising from the same, "factual grouping," "transaction," or "series of transactions." *Smith v. Russell Sage College* 54 N.Y.2d 185, 192–193, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981) (emphasis added); *see also Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994) (Under the doctrine of *res judicata* "a final judgment on the merits of an action precludes the parties or their privies from [relitigation of] issues that were or *could have been raised in that action.*") (emphasis added). There is no doubt that both the claims asserted in the State Action and in the Federal Complaint arose from the same "factual grouping"—the plaintiff's purchase of the shares of the Company in November, 1987, the representations at the time, if any, and the subsequent redemption at an adequate price of those shares by the Company and by the decedent and decedent's associated stockholders in the Company almost two years thereafter. Moreover, as shown above, the decedent was in privity with both the individual and corporate defendants in the State Action and the causes of action which the plaintiff is now attempting to interpose should have been, or at the very least, could have been, asserted against the decedent in the State Action.

## Conclusion

In the vernacular, the claims in this suit were dead on arrival by reason of *res judicata* and doctrines of privity of interest. The Federal Complaint is dismissed, with costs to the estate.

So Ordered.