*Lipman v. Rodenbach*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of April, two thousand twenty-one.

PRESENT:    Guido Calabresi,
            Steven J. Mensahi,
                    *Circuit Judges*
            John G. Koeltl,[*]
                    *District Judge.*

_____

NATALIE F. LIPMAN,

        *Plaintiff-Appellant,*

    v.                                              No. 20-1650

EDWARD F. RODENBACH, CUMMINGS & LOCKWOOD LLC, JANE M. BARBER,

        *Defendants-Appellees.*

_____

[*] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

_____

For Plaintiff-Appellant:	FRANCIS CARLING, New York, New York.

For Defendants-Appellees Edward F.	MICHAEL P. KAELIN (William N. Wright, _on_
Rodenbach and Cummings &	_the brief_), Cummings & Lockwood LLC,
Lockwood LLC:	Stamford, Connecticut.

For Defendant-Appellee Jane F. Barber:	ELIZABETH USINGER, Cullen and Dykman
LLP, Garden City, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hurley, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Natalie Lipman appeals the district court's dismissal of her complaint filed against Edward Rodenbach, Jane Barber, and Cummings & Lockwood LLC. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

2

**I**

Lipman was married to Paul Plishner, who is now deceased. Barber is Plishner's daughter, but not from his relationship with Lipman. Rodenbach was Plishner's personal attorney and is a principal at Cummings & Lockwood LLC.

Well before his marriage to Lipman, Plishner established the Paul J. Plishner Revocable Trust (the "Living Trust") to manage his financial affairs. He transferred substantially all his assets, including his Southampton home, to the Living Trust, and he named himself, Barber, and Rodenbach co-trustees. Plishner and Lipman entered into an antenuptial agreement prior to their marriage. The agreement provided for two annuity benefits, one that Lipman would receive if Plishner became "disabled" during their marriage (the "disability benefit") and another that Lipman would receive if Plishner predeceased her (the "death benefit"). After his marriage to Lipman, Plishner amended the Living Trust to require the trustees, Rodenbach and Barber, to comply with the antenuptial agreement's annuity obligations. Plishner also established three additional trusts to facilitate the payment of either the disability benefit or the death benefit. Plishner named Barber and Rodenbach co-trustees of these trusts as well.

When Plishner died in November 2017, Rodenbach demanded that Lipman vacate Plishner's Southampton home before any of Plishner's trusts would pay Lipman the death benefit. Rodenbach allegedly also made comments and took actions that caused Lipman emotional distress.

To remedy these alleged wrongs, Lipman filed suit in April 2018. Lipman sued only Barber, not Rodenbach, on the theory that Rodenbach was acting on Barber's orders as her attorney. Lipman's suit included a claim for intentional infliction of emotional distress ("IIED") premised on Rodenbach's alleged conduct. Lipman also claimed that Barber breached her fiduciary duties as co-trustee of the Living Trust by failing timely to pay Lipman the death benefit. Additionally, Lipman sought injunctive relief permitting her to remain in Plishner's Southampton home as well as a declaratory judgment regarding the validity of the Plishner trust known as the "CRAT" (Charitable Remainder Annuity Trust), which Plishner established for the purpose of paying Lipman's death benefit.

Barber responded to the complaint by either denying or denying knowledge of most of Lipman's allegations and insisting that Rodenbach was not acting as her agent. In their first conference with the magistrate judge, the parties agreed to

4

settle, and the magistrate judge set forth the terms of the settlement on the record. The parties agreed that Lipman would purchase Plishner's Southampton home for $2.3 million and that she would begin to receive the death benefit once the sale was complete. During the settlement conference on the record, the magistrate judge said that "this sale of the house will resolve all claims, all counter-claims, everything incorporated in this case. There will be no more suing, there will be no more claims, there will be no more litigation." Appellant's App'x 145.

Because Rodenbach, along with Barber, was a co-trustee of the trust that owned the house and the trust that would pay the death benefit, the magistrate judge confirmed that Rodenbach "authorize[ed] [Barber] to enter into the [settlement] agreement on his behalf." *Id.* at 149. With the settlement concluded, and pursuant to its terms, Lipman and Barber filed a joint stipulation of dismissal with prejudice.

Lipman purchased the Southampton house and began to receive annuity payments. The litigation, however, did not end. In February 2019, Lipman brought another lawsuit alleging: (1) breach of fiduciary duty—against Barber and Rodenbach, as trustees of the Living Trust—for failing to have Plishner declared "disabled" and to pay the disability benefit to Lipman while Plishner was alive;

(2) IIED against Rodenbach; (3) breach of fiduciary duty against Rodenbach for failure to pay Lipman's death benefit in a timely fashion upon Plishner's death; (4) violations of Section 487 of the New York Judiciary Law[1] against Rodenbach; (5) legal malpractice against Rodenbach; (6) legal malpractice against Rodenbach's firm, Cummings & Lockwood; and (7) failure to reimburse Lipman for $9,092 in insurance payments for the Southampton home. Additionally, Lipman again sought a declaratory judgment about the validity of the CRAT.

The district court dismissed the complaint in its entirety as barred by *res judicata*. *See Lipman v. Rodenbach*, No. 19-CV-01073, 2020 WL 2307980 (E.D.N.Y. May 8, 2020).

**II**

We review a district court's dismissal of a complaint de novo, accepting the plaintiff's allegations as true and drawing all inferences in the plaintiff's favor. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). In assessing a defendant's "*res judicata* defense" at the motion-to-dismiss stage, we consider "the

---

[1] Section 487 provides a private right of action against lawyers who cause injury through deceitful conduct.

plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *Id.*

Because Lipman's first lawsuit was adjudicated by a New York-based federal court sitting in diversity, we look to New York law to determine the preclusive effect of that action. *See Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). "In New York, res judicata, or claim preclusion, bars successive litigation based upon the 'same transaction or series of connected transactions' if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008) (internal citation omitted). The district court correctly determined that these circumstances were present in this case and that *res judicata* therefore barred this lawsuit.

**A**

An earlier action can have claim preclusive effect if it was "brought to a final conclusion." *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981). Lipman's first suit meets that standard. Lipman and Barber settled the lawsuit on the record with a magistrate judge, and they jointly dismissed the suit with

prejudice. *See Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2d Dep't 2010) ("The general rule is that a stipulation of discontinuance 'with prejudice' is afforded res judicata effect and will bar litigation of the discontinued causes of action."). During the settlement conference on the record, the magistrate judge even said that the settlement would "resolve all claims, all counter-claims, everything incorporated in this case. There will be no more suing, there will be no more claims, there will be no more litigation." Appellant's App'x 145.[2]

**B**

Because Lipman sued Barber in the first suit, Barber may rely on that action's preclusive effect. Rodenbach was not a party to the first lawsuit. New York courts have made clear, however, that a defendant may claim that a plaintiff is precluded from maintaining a suit against him because the defendant was in privity with the plaintiff's adversary in an earlier action. *See Nemetty v. Naylor*, 3

---

[2] Lipman argues that, because the earlier suit settled before any discovery, she did not have "a full and fair opportunity to litigate [her] claim" and this action should therefore not be precluded. *Allen v. McCurry*, 449 U.S. 90, 101 (1980). Lipman, however, *did* have "a full and fair opportunity to litigate [her] claim," *id.*; she merely chose to settle rather than exercise that option.

8

N.E. 497, 497-98 (N.Y. 1885); *Syncora Guarantee Inc. v. J.P. Morgan Sec. LLC*, 970 N.Y.S.2d 526, 530-31 (App. Div. 1st Dep't 2013). Therefore, if Rodenbach was in privity with Barber in Lipman's first lawsuit, he also may rely on that action's preclusive effect.[3]

Under New York law, "privity is not susceptible to a hard-and-fast definition." *Applied Card Sys.*, 894 N.E.2d at 12. Privity will be established when, for example, a nonparty "shar[es] control" of a litigation or when a nonparty's "interests are represented by a party to [an] action." *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743-44 (N.Y. 1970); *see also Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987) ("Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding."). "Ultimately," New York courts focus on whether "a finding of privity" that would preclude the later lawsuit "strike[s] a

---

[3] This case presents a scenario that differs from the one discussed by the New York Court of Appeals in *Applied Card Systems*. In that case, a defendant asserted that *res judicata* barred the lawsuit because the plaintiff in that suit was in privity with a party that sued the defendant in a previous action. *Applied Card Sys.*, 894 N.E.2d at 4, 11-12. Here, by contrast, a defendant, Rodenbach, argues that *res judicata* should bar the lawsuit against him because he was in privity with the defendant, Barber, in a previous action brought by the same plaintiff, Lipman. Nevertheless, the same concept of privity applies to both scenarios. *See Syncora Guarantee*, 970 N.Y.S.2d at 530-31.

fair result under the circumstances." *Applied Card Sys.*, 894 N.E.2d at 13. Courts assess the fairness of finding privity with "reference to the policies that res judicata is designed to protect," including "a party's right to rely upon the finality of the results of previous litigation" and a desire not to "destroy or impair rights conclusively established" in an earlier case. *Id.* at 13-14 (internal quotation marks omitted).

Under this standard, Rodenbach was in privity with Barber in Lipman's first lawsuit. In that action, Lipman accused Barber of intentionally inflicting emotional distress upon her through Rodenbach's actions. Additionally, Lipman sought damages premised on Barber's role as a trustee of the Living Trust and that trust's failure to provide her with annuity payments. Lipman also sought to avoid eviction from a house that the Living Trust owned. Rodenbach was a co-trustee of the Living Trust. The original action therefore implicated Rodenbach's interests. He was even required to sign off on the settlement before it was entered. For these reasons, we conclude that Rodenbach's interests were "represented in the prior proceeding." *Green*, 514 N.E.2d at 108.

Finding privity here also "strike[s] a fair result" consistent with "the policies that res judicata is designed to protect." *Applied Card Sys.*, 894 N.E.2d at 13. After

10

Barber settled the litigation over Rodenbach's allegedly emotionally harmful actions and the Living Trust's alleged failure to properly provide for Lipman, Rodenbach—as a co-trustee of the Living Trust and the actor about whom Lipman complained—was entitled "to rely upon the finality of the results" of that "previous litigation." *Id.* Moreover, if Lipman were allowed to recover in this suit for Rodenbach's failure to pay the death benefit in a timely fashion upon Plishner's death, that would "impair rights conclusively established" by the prior settlement. *Id.* at 14 (internal quotation marks omitted). The settlement provided that Lipman would receive the death benefit only once she purchased the Southampton home.[4]

## C

New York "has adopted the transactional analysis approach in deciding *res judicata* issues." *O'Brien*, 429 N.E.2d at 1159. This approach bars "all other claims

---

[4] Lipman attempts to rebut the district court's finding of privity by pointing to Barber's answer in the original action, in which Barber denied that she was responsible for Redenbach's allegedly harmful conduct. Because Barber denied the alleged connection between her and Rodenbach's actions, Lipman says, Rodenbach cannot argue that he was in privity with Barber for the purposes of that lawsuit. However, Lipman's complaint in the first action alleged that Barber and Rodenbach acted in concert to injure her, and a party cannot rebut a finding of privity "by contradicting the allegations in its own pleadings." *Syncora Guarantee*, 970 N.Y.S.2d at 531. In any event, Lipman brought suit to recover for Rodenbach's conduct in that action. Once Barber denied that she and Rodenbach were acting in concert, Lipman could have added Rodenbach as a defendant but chose instead to settle her claims.

arising out of the same transaction or series of transactions" that formed the basis of the original suit "even if" those other claims are "based upon different theories or … seek[] a different remedy." *Id.; see also In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005) ("[R]es judicata … applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation."). New York courts use "[a] 'pragmatic' test" when applying this transactional approach, "analyzing 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Xiao Yang Chen v. Fischer*, 843 N.E.2d 723, 725 (N.Y. 2005).

All the claims in Lipman's current suit arise out of the same "series of transactions" as her first suit, *O'Brien*, 429 N.E.2d at 1159, and would have formed "a convenient trial unit," consistent with "the parties' expectations" about the claims in Lipman's first action, *Fischer*, 843 N.E.2d at 725. As in the first suit, Lipman seeks to recover for damages suffered as a result of the Living Trust's failure to pay her annuity benefits in accordance with the antenuptial agreement. While Lipman seeks damages in this suit for the Living Trust's failure to pay her the disability benefit in addition to the death benefit—a claim not made in the first

12

lawsuit—we think a claim regarding a trust's failure to comply with one provision of an antenuptial agreement is related to (and forms part of the same series of transactions as) a claim regarding the same trust's prior failure to comply with a different provision of the same antenuptial agreement.

Lipman attempts to narrow the preclusive scope of her first action by arguing that her disability benefit claim in this suit is based on evidence that she discovered only after the original action settled—specifically, the amendment Plishner made to the Living Trust directing its trustees to comply with the annuity payment provisions of the antenuptial agreement. But "[a]fterthoughts or after discoveries however understandable and morally forgivable are generally not enough to create a right to litigate anew." *Reilly v. Reid,* 379 N.E.2d 172, 175 (N.Y. 1978). New York courts have recognized an exception to this rule when the "plaintiff[] could not have discovered the evidence … with reasonable diligence" before bringing the first action. *Sapphire Inv. Ventures, LLC v. Mark Hotel Sponsor LLC*, 16 N.Y.S.3d 56, 57 (App. Div. 1st Dep't 2015). The record, however, does not support an inference that Lipman could not have discovered the amendment with reasonable diligence. Lipman's complaint merely alleges that Barber and Rodenbach knew of the amendment and did not inform Lipman of it. Nowhere

13

does Lipman allege that she could not access and inspect the trust documents. Moreover, any claim that she could not have discovered the amendment with reasonable diligence is undercut by her acknowledgment that her lawyer discovered the amendment when he unilaterally decided to look more closely at the antenuptial agreement and trust documents and the fact that her complaint in the first action quoted from the Living Trust. *See Burgess v. Goord*, 729 N.Y.S.2d 203, 205 (App. Div. 3d Dep't 2001) (applying *res judicata* where there was "nothing in the record to support respondents' contention … that the allegedly newly discovered evidence supporting" their action "was not available and could not have been made available through the exercise of reasonable diligence prior to" an earlier action addressing the same issue).

Lipman's other claims are similarly related to the first lawsuit. Lipman bases her claim for reimbursement of insurance payments on the theory that the Living Trust was responsible for those payments when Plishner died, again seeking damages for the Living Trust's failure to provide for her after Plishner's death. In a similar vein, Lipman's claim for IIED against Rodenbach is premised on much of the same conduct that allegedly supported her IIED claim in the first lawsuit. Furthermore, Lipman's complaint in this action again includes a request for a

14

declaratory judgment as to the validity of the CRAT.[5] And finally, Lipman supports her claims for legal malpractice and violation of Section 487 of New York's Judiciary Law with same factual allegations that allegedly support her claims regarding Rodenbach's IIED and the Living Trust's failure to provide for her.

In sum, all the claims in this suit arise out of the same "series of transactions" as Lipman's first action, even though the claims may be "based upon different theories or … seek[] a different remedy." *O'Brien*, 429 N.E.2d at 1159. Because the first action also qualifies as an adjudication on the merits and the parties to this action are the same as or were in privity with the parties in that action, *res judicata* bars Lipman from maintaining this suit.

\* \* \*

---

[5] Lipman argues that this claim differs from the one in her first action because she questions the validity of the CRAT based on a new theory related to her recent discovery of the amendment Plishner made to the Living Trust. For the same reasons as stated above, this argument does not prevent the application of *res judicata* here.

15

We have considered Lipman's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court